ALEX FRIEDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63800. Filed September 27, 1957.

*Harris K. Weston, Esq.*, for the petitioner.
*Conley G. Wilkerson, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $1,278.03 in the petitioner's gift tax for 1953. The only issue is whether the petitioner's wife can be regarded as having made one-half of the gifts in question. The facts have been submitted by a stipulation which is adopted as the findings of fact.

Section 1000 (f) (1) (A) of the Internal Revenue Code of 1939 provides that a gift made by a husband or by a wife to a third party may be considered as made one-half by each spouse under certain circumstances. It also provides that "an individual shall be considered as the spouse of another individual only if he is married to such individual at the time of the gift and does not remarry during the remainder of the calendar year." Subparagraph (1) (B) provides that "[s]ubparagraph (A) shall be applicable only if both spouses have signified * * * their consent to the application of subparagraph (A) in the case of all such gifts made during the calendar year by either while married to the other." Section 1000 (f) (2) (B) (i) is as follows:

(B) TIME.—Such consent may be so signified at any time after the close of the calendar year in which the gift was made, subject to the following limitations—

(i) the consent may not be signified after the 15th day of March following the close of such year, unless before such 15th day no return has been filed for such year by either spouse, in which case the consent may not be signified after a return for such year is filed by either spouse;

The petitioner married Helen G. Salinger, a widow, on June 18, 1953. The petitioner made present gifts to each of his three adult children on or about December 2, 1953. The largest gift was $5,700 and their total amount was $16,167.13.

The petitioner and Helen were absent from the United States from December 6, 1953, until May 10, 1954.

The petitioner and Helen each executed a gift tax return on May 28, 1954, and filed it on June 2, 1954, showing the above-mentioned gifts and showing on each that the other spouse consented to have the petitioner's gifts considered as having been made one-half by himself and one-half by Helen, his wife. Each signed the consent of spouse on the other's return. Each return was accompanied by an affidavit stating that the taxpayer was continuously absent from the United States from December 6, 1953, until May 10, 1954, and for that reason was unable to file a gift tax return at an earlier date. The excuse for the late filing was apparently satisfactory. The stipulated facts do not show whether or not gifts made by Helen before her marriage were shown on her return.

The Commissioner does not argue that the gifts in question should not be regarded as having been made one-half by each spouse on the facts thus far stated. There would be no tax due on the petitioner's gifts in such case, since they were present gifts each in an amount less than the annual exclusion. The Commissioner's only contention is that Helen could not properly consent after March 15, 1954, under the law and the regulations because she had filed a gift tax return on that earlier date. Helen made substantial gifts in trust for her two adult children early in June 1953, prior to her marriage to the petitioner. Her son, as her attorney in fact, filed on her behalf on March 15, 1954, a gift tax return reporting the gifts which she had made in the previous June, showing gift tax liability in the amount of $26,537.80. The son corrected an error in that return by an amendment filed on May 7, 1954, and reported the resulting additional liability of $450. He explained on each form that the taxpayer was absent from the United States. The parts of those forms relating to consent by a spouse were all left blank. Helen, then the petitioner's wife, filed an affidavit on June 4, 1954, dated June 2, 1954, stating the time during which she was absent from the United States; that her son, as attorney in fact, had filed gift tax returns on her behalf; and that they were correct, with an exception not here material. All of the returns herein were filed with the district director of internal revenue at Cincinnati, Ohio.

Section 86.20 of Regulations 108 provides that a return may be filed by an agent if the taxpayer is unable to file the return within the time prescribed because of absence, but in such case the return filed by the agent must be ratified by the taxpayer within a reasonable time after being able to do so, "otherwise the return filed by the agent will not be considered the return required by the statute." The ratification must be in the form of an affidavit filed with the Commissioner. Helen filed such a ratification on June 4, which was after she had properly signified her consent to split her husband's gifts. Thus the documents filed by the son earlier in the year did not form

a complete return as required by the law and regulations until June 4, 1954. The Commissioner states in his reply brief that "the result for which petitioner now contends * * * could have been accomplished by filing with her ratification, the consent of Mrs. Frieder to treat the petitioner's gifts as made one-half by her." His theory is, apparently, that both would relate back to March 15, 1954. The necessity for such action is not apparent when, as here, she had previously signified her consent to the splitting of her husband's gifts. A consent which was not effectively signified until after the 15th of March following the close of the calendar year to which it applies may not be revoked. Sec. 1000 (f) (3)· (B). All of the filings of forms by or for Helen in 1954 combine to form her gift tax return for 1953.

The Commissioner's position herein is not supported by either the words or the spirit and intention of section 1000 (f). Section 1000 (f) (2) (B) was intentionally made more liberal than the original provisions of section 374 (f) (2) of H. R. 4790, 80th Cong., 2d Sess. Helen was not the wife of the petitioner at the time she made the gifts to her children. Neither party suggests that those gifts are in any way within the provisions of section 1000 (f), and it is obvious that they were not. The definition of "spouse" for all purposes of section 1000 (f) is based on marriage at the time of the gifts and does not depend on whether or not they were married at the time of filing returns or signifying consent. The gift tax returns for Helen, filed by her son in her absence, related to gifts made by her as an unmarried woman, when she was not a "spouse" within the definition of section 1000 (f). Those forms were not "spouse" returns referred to in section 1000 (f) (2) (B) (i). The language of that provision is rather complicated, perhaps unnecessarily so. It provides, in a case like this one, that a consent may be signified at any time up to and including the filing of the first spouse return for the year of the gifts. It does not refer to a return of a grantor solely for gifts made when such grantor was unmarried. Its purpose appears to have been to preclude, for administrative convenience, more than one opportunity after March 15 of the succeeding year for a spouse, as grantor, to claim a consent of his mate, or as nongrantor, to grant a consent to be a co-grantor.

Section 86.3a (b) of Regulations 108 provides that consent must be signified by both spouses; that may be done on a single return; "[h]owever, wherever possible notice of the consent is to be shown on both returns" if each spouse files a return for the year. It is not claimed that it would have been possible for Helen's son to have granted or withheld her consent as a spouse in regard to gifts made by her new husband when he acted on her behalf on March 15, 1954. It was not until the petitioner made out his gift tax return for 1953 that the question of the signification of consent by Helen became

important and meaningful. Only then could the required mutual consent be signified on a return reporting the gifts involved. Helen and the petitioner then complied fully with the requirements of section 1000 (f) and the petitioner should not be deprived of the benefits of that section because prior to that time Helen's son had filed a gift tax return for her with respect to gifts made before she became a spouse within the meaning of section 1000 (f).

The first spouse return to be filed, within the meaning of section 1000 (f), was the one reporting the gifts of the petitioner to his three children, the only gifts made by a spouse as defined in that section. The Commissioner knew that consent had to be signified in that return or the entire gifts would be taxable to the petitioner. The earlier documents filed in Helen's name by her son did not relate to gifts by a spouse and could not have misled the Commissioner or complicated the administration of the gift tax laws.

Reviewed by the Court.

*Decision will be entered for the petitioner.*