HUGH McK. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57509. Filed November 13, 1957.

---

[3] Rev. Rul. 261, 1955–1 C. B. 307, 312.

*Thomas S. McPheeters, Jr., Esq.*, and *William H. Charles, Esq.*, for the petitioner.

*William H. Welch, Esq.*, for the respondent.

PIERCE, *Judge:* Respondent determined deficiencies in gift tax in respect of the petitioner, for the years 1951 and 1952 in the amounts of $4,331.79 and $27.93, respectively.

The issues for decision are:

(1) Whether, in determining the amount of petitioner's gifts for the year 1951, there should be allowed pursuant to section 1003 (b) of the 1939 Code,[1] four exclusions of not to exceed $3,000 each, in respect of the interests of his four living adult children in four separate irrevocable trusts which he created in said year. The answer depends on whether the values of the present interests (as distinguished from future interests) of said beneficiaries in the trusts are susceptible of determination.

---

[1] SEC. 1003. NET GIFTS.

  (b) EXCLUSIONS FROM GIFTS.—

     *       *       *       *       *       *       *

    (3) GIFTS AFTER 1942.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

(2) Whether, in determining the amount of petitioner's gifts for 1951, there also should be allowed pursuant to said section of the Code, four other exclusions, in respect of the interests of four minor grandchildren of the petitioner in a fifth irrevocable trust which he created in said year. The answer to this depends on whether the interests of said beneficiaries in the trust were future interests, within the meaning of said section.

No question need be decided with respect to the year 1952. The deficiency for said year resulted solely from the increased rate of tax which became applicable for said year, by reason of the additional amount of gifts determined for the preceding year 1951.

### FINDINGS OF FACT.

Several of the facts have been stipulated. The stipulation, together with the exhibits thereto attached, is incorporated herein by reference.

The petitioner, Hugh McK. Jones, is a resident of St. Louis County, Missouri. His gift tax return for the year 1951 was filed with the then collector of internal revenue for the first district of Missouri; and his gift tax return for 1952 was filed with the district director of internal revenue for the St. Louis, Missouri, district.

On September 21, 1951, the petitioner, who was then 70 years of age, created five separate irrevocable trusts, by entering into five separate indentures of trust which were executed under date of September 20, 1951, by him as the grantor, and by himself and the St. Louis Union Trust Company, a corporation of the city of St. Louis, Missouri, as cotrustees. Four of these trusts were created for the respective primary benefits of his four living adult children; and the fifth trust was created for the joint primary benefit of four minor children of a deceased son. At the time of the creation of said trusts, petitioner transferred to the trustees of each, without actual consideration, marketable securities of the then fair market value of $21,645, as the initial trust estate.

More specific facts respecting said trusts and the beneficiaries thereof are as follows:

### Facts re Trusts for Children.

The primary beneficiaries of the four trusts for the benefit of petitioner's children were, respectively: His son, Hugh McK. Jones, Jr.; his daughter Florence T. Jones (whose present name is Florence Jones Terry); his daughter Grace J. Borg (whose present name is Grace Borg Tupper); and his daughter Carroll Jones McPheeters. All of these children were adults at the time of the creation of the trusts.

The four indentures for said trusts were essentially the same for present purposes. The indenture of the trust for the son, Hugh McK. Jones, Jr., which is typical, provided in substance and so far as here material, as follows:

Section Two provided, in substance, that the entire net income of the trust estate should be paid to Hugh McK. Jones, Jr., son of the grantor, for and during his natural life; and that upon the death of said son, the trustees should continue to hold the trust estate, in further trust, for the benefit of the then living descendants of said son, per stirpes, or in the absence of such descendants for the benefit of certain other described persons exclusive of the grantor, for such periods and in accordance with such terms and conditions as were mentioned in the indenture.

Section Four provided:

SECTION FOUR: The Grantor hereby authorizes the St. Louis Union Trust Company, Trustee, to encroach upon the principal of the trust estate for the use and benefit of any of the beneficiaries of the trust created hereby to provide for their proper maintenance, education and support, in accordance with the standard of living to which they have been accustomed, or to provide against any emergency which may arise affecting them occasioned by sickness, accident, ill health, misfortune or otherwise, and the said Trustee may advance such sum or sums out of the principal of the trust estate for the use and benefit of said beneficiaries as it shall consider reasonable and proper under the circumstances and may make such advancements from time to time when it believes it proper to do so and for the best interests of said beneficiaries.

The financial circumstances of each said child of the petitioner, on the date of said gifts in trust, were as follows:

(a) Hugh McK. Jones, Jr., was 31 years of age, married, and the father of three children. He was an architect engaged in his profession in Guilford, Connecticut. He lived with his family in Guilford, in a house which he and his wife owned jointly, which cost approximately $47,000 and was subject to a mortgage of about $15,000. In addition, he owned unimproved real estate near Guilford, which was acquired and held for development and subdivision purposes, and which had a cost of $14,500 and was unencumbered. Also, he was the beneficiary of the following trusts:

(1) Trust under conveyance of Hugh McK. Jones, Jr. (himself), dated January 7, 1949, with St. Louis Union Trust Company, trustee, T. D. 16,083. The assets of this trust consisted of securities having a market value in September 1951 of approximately $100,000, and the net income from said trust during the year 1951 was approximately $5,700. Said Hugh McK. Jones, Jr., was entitled to all the income from said trust and had the right to revoke the same, in whole or in part, at any time.

(2) Trust under conveyance of Carroll West Jones (his mother) dated September 21, 1951, St. Louis Union Trust Company and Hugh

204

McK. Jones, trustees, T. D. 17,124. The assets of this trust consisted of marketable securities worth on September 21, 1951, $21,500. Said Hugh McK. Jones, Jr., was entitled to all of the net income of said trust during his lifetime. The income from this trust paid or payable to Hugh McK. Jones, Jr., for his taxable year ended December 31, 1952, was $974.54.

(3) Trust under conveyance of Carroll West Jones dated December 31, 1941, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 13,218. The assets of this trust consisted of marketable securities having a value on September 21, 1951, of approximately $16,000. Under the terms of this trust said Hugh McK. Jones, Jr., was entitled to all of the income during its continuance. The income from this trust payable to Hugh McK. Jones, Jr., for 1951 was $719.97. Said trust terminated on December 31, 1951, and said Hugh McK. Jones, Jr., was entitled to and received distribution of the corpus thereof, free of trust.

The 1951 earned income of Hugh McK. Jones, Jr., from his profession as an architect was approximately $4,500. The total joint gross income of him and his wife for the year 1951 was $11,444; and that for the years 1950 and 1949 was $10,846 and $9,935, respectively.

(b) Florence T. Jones was 44 years of age, unmarried, and had no dependents. She was a registered nurse, employed by St. Luke's Hospital in St. Louis, Missouri. She lived in St. Louis County in a house owned by petitioner and furnished to her by him. She owned marketable securities having a value of approximately $20,000, and cash of approximately $1,000. Also, she was the beneficiary of the following trusts:

(1) Trust under conveyance of Robert McK. Jones (her grandfather) dated May 31, 1923, Hugh McK. Jones, trustee, St. Louis Union Trust Company, agent, T. D. 10,716. The assets of this trust consisted of securities having a market value in September 1951 of approximately $125,000, and the net income from said trust during the year 1951 was approximately $6,750. Said Florence T. Jones was entitled to all of the income from said trust during her life, and in the discretion of the trustee the trust was terminable at any time in whole or in part and the principal thereof was distributable to her.

(2) Trust under conveyance of Carroll West Jones (her mother) dated September 21, 1951, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 17,125. The assets of this trust consisted of marketable securities worth on September 21, 1951, $21,500. Said Florence T. Jones was entitled to all of the net income of said trust during her lifetime. The income from this trust paid or payable to Florence T. Jones for her taxable year ended December 31, 1952, was $975.21.

(3) Trust under conveyance of Carroll West Jones dated December 31, 1941, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 13,214. The assets of this trust consisted of marketable securities having a value on September 21, 1951, of approximately $17,000. Under the terms of this trust said Florence T. Jones was entitled to all of the income during its continuance. The income from this trust payable to Florence T. Jones for the year 1951 was $763.68. Said trust terminated on December 31, 1951, and said Florence T. Jones was entitled to and received distribution of the corpus thereof, free of trust.

The 1951 earned income of Florence T. Jones from her employment as a nurse was approximately $3,000. Her total gross income for the year 1951 was $11,594; and that for the years 1950 and 1949 was $10,030 and $6,235, respectively.

(c) Grace J. Borg was 39 years of age, married, and the mother of one child who was a student at Harvard. Her husband was a partner in a New York brokerage firm. She lived with her husband in Greenwich, Connecticut, in a house owned jointly by them, which cost approximately $40,000 and was encumbered by a mortgage of approximately $17,000. She owned securities which had a market value of approximately $20,000. Also, she was the beneficiary of the following trusts:

(1) Trust under conveyance of Robert McK. Jones (her grandfather) dated May 31, 1923, Hugh McK. Jones, trustee, St. Louis Union Trust Company, agent, T. D. 10,717. The assets of this trust consisted of securities having a market value in September 1951 of approximately $100,000, and the net income from said trust during the year 1951 was approximately $5,500. Said Grace J. Borg was entitled to all of the income from said trust during her life, and in the discretion of the trustee the trust was terminable at any time in whole or in part and the principal thereof was distributable to her.

(2) Trust under conveyance of Carroll West Jones (her mother) dated September 21, 1951, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 17,123. The assets of this trust consisted of marketable securities worth on September 21, 1951, $21,500. Said Grace J. Borg was entitled to all of the net income of said trust during her lifetime. The income from this trust paid or payable to Grace J. Borg for her taxable year ended December 31, 1952, was $992.13.

(3) Trust under conveyance of Carroll West Jones dated December 31, 1941, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 13,216. The assets of this trust consisted of marketable securities having a value on September 21, 1951, of approximately $13,000. Under the terms of this trust said Grace J. Borg was en-

titled to all of the income during its continuance. The income from this trust payable to Grace J. Borg for 1951 was $614.19. Said trust terminated on December 31, 1951, and said Grace J. Borg was entitled to and received distribution of the corpus thereof, free of trust.

Grace J. Borg had income for the year 1951, exclusive of that from trusts, of approximately $750. The evidence does not disclose the amount of the total gross income of her and her husband for said year, but their standard of living was comparable to that of the other members of the family.

(d) Carroll Jones McPheeters was 36 years of age, married, and the mother of three children. Her husband was a lawyer who had his office in St. Louis, Missouri. She lived with her family in St. Louis County, in a house owned jointly with her husband, which cost approximately $50,000 and was unencumbered. She owned marketable securities having a value of approximately $26,000, and cash of approximately $7,000. Also, she was the beneficiary of the following trusts:

(1) Trust under conveyance of Robert McK. Jones (her grandfather) dated May 31, 1923, Hugh McK. Jones, trustee, St. Louis Union Trust Company, agent, T. D. 10,715. The assets of this trust consisted of securities having a market value in September 1951 of approximately $120,000, and the net income from said trust during the year 1951 was approximately .$6,500. Said Carroll Jones McPheeters was entitled to all of the income from said trust during her life, and in the discretion of the trustee the trust was terminable at any time in whole or in part and the principal thereof was distributable to her.

(2) Trust under conveyance of Carroll West Jones (her mother) dated September 21, 1951, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 17,126. The assets of this trust consisted of marketable securities worth on September 21, 1951, $21,500. Said Carroll Jones McPheeters was entitled to all of the net income of said trust during her lifetime. The income from this trust paid or payable to Carroll Jones McPheeters for her taxable year ended December 31, 1952, was $974.54.

(3) Trust under conveyance of Carroll West Jones dated December 31, 1941, St. Louis Union Trust Company and Thomas S. McPheeters, Jr., trustees, T. D. 13,217. The assets of this trust consisted of marketable securities having a value on September 21, 1951, of approximately $17,000. Under the terms of this trust said Carroll Jones McPheeters was entitled to all of the income during its continuance. The income from this trust payable to Carroll J. McPheeters for the year 1951 was $777.21. Said trust terminated on December 31, 1951, and said Carroll Jones McPheeters was entitled to and received distribution of the corpus thereof, free of trust.

Carroll Jones McPheeters had income from all sources for the calendar year 1951, exclusive of gains from the sale of capital assets, of $8,768. The joint gross income of her and her husband for said year, including capital gains of $1,074, was $30,094. Such joint income for the years 1950 and 1949 was $27,300 and $25,400, respectively.

In addition to the foregoing, all of said children of the petitioner were joint beneficiaries of an irrevocable trust under conveyance of Robert McK. Jones (their grandfather), dated June 12, 1928, and amended on March 6, 1931, and December 31, 1932, under which their mother and St. Louis Union Trust Company were the trustees (trust No. 6931). The assets of this trust consisted of two policies of insurance on the life of petitioner in the aggregate face amount of $100,000, together with certain securities of which the income was to be used to pay the insurance premiums with any excess income to be accumulated and added to the principal. Upon the death of petitioner, one-fifth of the principal of the trust estate was to be distributed to each of petitioner's said children if living, or if they were not living then to their then living descendants, or in the absence of such descendants to the other living children of the petitioner or their descendants.

At the time of the creation of the four trusts here directly involved, the petitioner was as before stated 70 years of age; and his wife Carroll W. Jones, who was the mother of said children, was of the same age. At said time, each of petitioner's said children was living in a modest and comfortable, but not extravagant, manner.

At the time of the trial herein on December 4, 1956, the petitioner, his said wife, and all of his said children were still living. To that date, the corporate trustee of each of said trusts had never encroached upon the principal of any of said trusts, pursuant to the power granted to it in section Four of the several trust indentures; and no request had been received by it that any such encroachment be made.

### Facts re Trust for Grandchildren.

The fifth trust above mentioned, of which petitioner's grandchildren were the primary beneficiaries, provided in part as follows:

SECTION TWO: (a) The Trustees shall divide the trust estate into four equal shares for the respective benefit of Robert McK. Jones III, Mary Elizabeth Jones, Carroll West Jones and Thomas West Jones, the children of Grantor's deceased son, Robert McK. Jones II. The Trustees, during the minority of said grandchildren of the Grantor, shall use and apply so much of the net income and also of the principal of their respective shares as they may deem necessary for their proper education, maintenance and support until they respectively reach the age of twenty-one years, after which time the entire net income from the share of each such grandchild shall be paid to him or her direct during the further continuance of the trust; as and when each such grandchild reaches the age of twenty-one years, such grandchild shall receive one-fourth of his or

her respective share of the trust estate, free from trust; as and when each such grandchild reaches the age of twenty-five years, such grandchild shall receive one-third of the residue of his or her share of the trust estate free from trust; and as and when each such grandchild reaches the age of thirty years, such grandchild shall receive the remainder of his or her share, free from trust.

Other paragraphs of said section Two further provided, in substance, that in the event any of said beneficiaries should die before receiving his or her share of the trust estate, then upon his or her death the property constituting such share should be paid over to his or her descendant, per stirpes, subject to certain conditions provided; or in the absence of such descendants, then to be paid to or be administered in trust for the benefit of certain other described persons exclusive of the grantor, all in accordance with the terms and conditions of said indenture.

On the date of the creation of said trust, said grandchildren of the petitioner were, respectively, 18, 16, 13, and 9 years of age. The three older grandchildren were students in private schools in St. Louis County, Missouri; and the youngest was a student in a public school. The amounts of their gross incomes for the year 1951 were:

| | |
|---|---|
| Robert McK. Jones, III | $1,359.93 |
| Mary Elizabeth Jones | 1,142.99 |
| Carroll W. Jones | 1,171.24 |
| Thomas W. Jones | 1,170.04 |

In addition, each of said grandchildren was at the date of the creation of the present trust, the owner of property held for him or her by their mother and the St. Louis Union Trust Company, as curators. The values of such properties, which consisted of marketable securities, were as of said date as follows:

| | |
|---|---|
| Robert McK. Jones, III | $15,400 |
| Mary Elizabeth Jones | 15,650 |
| Carroll W. Jones | 15,600 |
| Thomas W. Jones | 15,300 |

Also, said grandchildren were equal beneficiaries of the following trusts:

(1) Trust under conveyance of Carroll West Jones (their grandmother) dated September 21, 1951, St. Louis Union Trust Company and Hugh McK. Jones, trustees, T. D. 17,127. The assets of this trust consisted of marketable securities which were worth in the aggregate $21,500; and the amount of income paid or payable therefrom to each of said grandchildren for the calendar year 1952, was $243.81.

(2) Certain trusts created by Grace R. Jones (mother of petitioner) dated March 13, 1943. The assets of these trusts had an aggregate market value on September 21, 1951, of approximately $10,000; and the amount of income paid or payable therefrom to each of said grandchildren for the year 1951 was $121.

The practice of the St. Louis Trust Company, in cases where a request for encroachment upon the principal of a trust of which it was a trustee was received from a beneficiary, was for one of its trust officers to determine the relevant facts pertinent to the provisions of the particular trust, including: The purpose for which the encroachment was sought; the financial circumstances of the beneficiary seeking the encroachment; and the other assets owned by or available to such beneficiary. Such trust officer would then submit a report, together with his recommendation for approval or disapproval of the encroachment, to the trust estate committee of the trustee; and the committee would thereupon act independently on the facts and recommendation so submitted to it.

The petitioner, in his 1951 gift tax return, claimed four exclusions of $3,000 each (total $12,000) in respect of the four transfers in trust for the benefit of his children; and four other exclusions in the amounts of $1,490.68, $1,786.47, $2,059.93, and $2,546.53 (total $7,883.61), in respect of the fifth transfer in trust for the benefit of his grandchildren.

The respondent, in his notice of deficiency, determined that none of said exclusions was allowable. He determined that, although the gifts of trust income to petitioner's children were present interests within the meaning of section 1003 (b) of the 1939 Code, the values of such interests were not susceptible of determination; and that the interests of petitioner's grandchildren in the fifth trust were future interests within the meaning of said section.

The values of the present interests of petitioner's children in the trusts created for their benefit were determinable; and the value of each such present interest, as of the date of the creation of the trusts, was more than $3,000.

The interests of petitioner's grandchildren in the trust created for them were future interests.

OPINION.

*I.*

The first question for decision is whether, in determining the total amount of petitioner's gifts for the year 1951, there should be allowed pursuant to section 1003 (b) of the 1939 Code, four exclusions of not more than $3,000 each, in respect of the four separate trusts which petitioner created in said year for the primary benefit of his four living adult children.

As hereinbefore shown in our Findings of Fact, each of said trusts was created by a separate irrevocable trust indenture; and, in each case, the property which petitioner transferred without consideration

to the trustees, as the principal of the trust, consisted of marketable securities of the value of $21,645. All of said trust indentures were substantially the same for present purposes. Each provided that the entire net income of the trust should be paid to the named primary beneficiary for and during his or her life; and that, from and after the death of such beneficiary, the principal of the trust should be administered and disposed of for the benefit of others, in the manner mentioned in the indenture. Also each of the indentures, in a separate section thereof, granted to the corporate trustee a power to encroach upon the principal of the trust "from time to time when it believes it proper to do so," in order to make advancements for the benefit of any beneficiary of such sums "as it shall consider reasonable and proper under the circumstances," "to provide for their proper maintenance, education and support, in accordance with the standard of living to which they have been accustomed, or to provide against any emergency which may arise affecting them occasioned by sickness, accident, ill health, misfortune or otherwise."

It now is well settled that gifts in trust are to be regarded for gift tax purposes as gifts to the beneficiaries rather than to the trustees (*Helvering* v. *Hutchings*, 312 U. S. 393); that a right given to a primary beneficiary to receive trust income currently is a *present interest* as distinguished from a future interest, within the meaning of said section 1003 (b); and that the right of remaindermen to have the benefit of the trust principal after the death of the primary beneficiary is a future interest. *Fondren* v. *Commissioner*, 324 U. S. 18. Also it is now settled that where, as in the instant case, there is a gift of income coupled with a power in the trustee to encroach upon principal, at such times and in such amounts as it deems proper, to meet certain possible needs, the interest of the primary beneficiary in such possible advancements from principal as the trustee may make, is likewise a future interest. *Fondren* v. *Commissioner, supra* at 18; *Commissioner* v. *Disston*, 325 U. S. 442, 446, 447; *Kniep* v. *Commissioner*, 172 F. 2d 755, 756 (C. A. 8). Thus it follows, in the instant case, that since the exclusions from gifts provided by section 1003 (b) of the Code are allowable only in respect of *present interests* as distinguished from future interests, any such exclusions in respect of the four transfers in trust here considered, may be allowed solely with regard to the rights of the primary beneficiaries to receive income, and not with regard to the rights either of said beneficiaries or of the remaindermen to receive advancements or distributions from the principal. If such rights of the primary beneficiaries to receive income are found to have any determinable value whatever, then the first $3,000 of such value must be excluded from the *total* amount of petitioner's gifts for the year 1951; but, otherwise, no such exclusion is allowable.

The respondent, in his notice of deficiency, determined that no exclusion was allowable in respect of any of the four transfers in trust here considered, on the ground that, although the right of each primary beneficiary to receive income was a present interest, the values of such present interests were not susceptible of determination. His position on brief is in substance that, since the corporate trustee might possibly encroach upon the principal of each trust to an extent where no principal would remain from which the beneficiaries could receive income, no value for the income rights of these beneficiaries is ascertainable. Thus, in practical effect, the right of each primary beneficiary to receive income was assigned a zero value—notwithstanding that each of the transfers in trust, in respect of which the right of the primary beneficiary to receive income for life was a material part, was valued and taxed as a gift in the amount of $21,645. We think this was erroneous.

The valuation of the life interest in any trust estate, and also the valuation of the remainder interests, are necessarily subject to many uncertainties. For example, no one can determine as of the date of a particular transfer in trust, how long the life beneficiary may live; or whether the trust estate will appreciate, depreciate, or be lost entirely; or what income, if any, the trust estate may yield during each year of the primary beneficiary's life. But yet in most cases, some value must be determined for the life estate or for the remainder, or for both, if the gift tax is to be operative. Thus, the applicable Treasury regulations for both gift taxes and estate taxes have made provision that the values of life interests and of remainders shall be determined by resort to probabilities, through use of mortality tables and the application of presumed rates of income yield. See Regs. 108 (gift tax), sec. 86.19, as amended; and Regs. 105 (estate tax), sec. 81.10, as amended. As was said by the Court of Appeals for the First Circuit in *McMurtry* v. *Commissioner*, 203 F 2d. 659, 666:

The whole problem of valuing individual life interests by resort to mortality tables is at best a matter of educated guesswork. The courts cannot demand perfection in an area so fraught with speculation and uncertainty. * * *

Also, where in situations like the present, either a donor or a testator has made a gift of trust income for life and, being aware of the uncertainties of our world, has granted a power to the trustee to encroach upon the trust estate, from time to time in its discretion, to provide for certain possible needs or emergencies that may affect the income beneficiary, there is created still another factor of uncertainty in the valuation of the interest of the life beneficiary or remaindermen. But in these situations likewise, the courts have recognized in numerous cases that resort may be made to probabilities; and that, for tax purposes, the value of the life interest or remainder is determinable

if: (a) The power of encroachment is limited by an ascertainable standard,[2] and (b) the possibility of encroachments being made in accordance with such standard is so remote as to be negligible. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, 154; *Lincoln Rochester Tr. Co.* v. *Commissioner*, 181 F. 2d 424 (C. A. 2) ; *Berry* v. *Kuhl*, 174 F. 2d 565 (C. A. 7) ; *Commissioner* v. *Wells Fargo B. & U. Tr. Co.*, 145 F. 2d 130 (C. A. 9) ; *Commissioner* v. *Robertson's Estate*, 141 F. 2d 855 (C. A. 4) ; *Commissioner* v. *Bank of America, Etc.*, 133 F. 2d 753 (C. A. 9) ; *Estate of Oliver Lee*, 28 T. C. 1258; *William H. Robertson*, 26 T. C. 246; *Estate of Leonard O. Carlson*, 21 T. C. 291; *Estate of Anna Finley Kenny*, 11 T. C. 857; *Estate of Edwin E. Jack*, 6 T. C. 241; *Estate of James M. Schoonmaker*, 6 T. C. 404. See also *McHugh* v. *United States*, 135 Ct. Cl. 520, 142 F. Supp. 927, in which the above principle was recognized in determining the value for gift tax purposes of the life beneficiary's interest in the possibility of encroachment upon principal by the trustee. See also *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 F. 2d 710, in which the Court of Appeals for the Second Circuit, in an opinion by Judge Learned Hand, applied this same principle in a case involving the income tax for a trust.

Applying the foregoing principle in the instant case, we think that the values of the income interests of petitioner's children in the trusts here considered, are determinable for the following reasons:

1. It is our opinion that the corporate trustee's power of encroachment here involved was limited by an ascertainable standard. In numerous decided cases, encroachment provisions similar to the present have been interpreted to have for their purpose the maintenance of the accustomed standard of living of the person for whose benefit the encroachment was permitted.; and the provisions have been held to establish sufficiently fixed and definite standards to make possible the valuation of beneficiaries' interests. Such provisions include those authorizing encroachments, "to suitably maintain her [the life beneficiary] in such comfort as she now enjoys," *Ithaca Trust Co.* v. *United States, supra;* "on account of any sickness, accident, want or other emergency," *Commissioner* v. *Wells Fargo B. & U. Tr. Co., supra;* "in case she [the life beneficiary] should, by reason of accident, illness or

---

[2] The concept of "an ascertainable standard" is recognized also in the estate tax provisions of the 1939 Code, relating to the tax effects of a power of appointment, where it is said :

SEC. 811. GROSS ESTATE.

(f) POWERS OF APPOINTMENT.—

\*      \*      \*      \*      \*      \*      \*

(3) DEFINITION OF GENERAL POWER OF APPOINTMENT.—\* \* \*

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

other unusual circumstances so require," *Commissioner* v. *Bank of America, Etc., supra;* "to take care of any emergency, illness or necessity," *Estate of Oliver Lee, supra;* and "[as the trustee] shall deem necessary for her maintenance and support," *William H. Robertson, supra.* See also *Lincoln Rochester Tr. Co.* v. *Commissioner, supra,* containing a review of authorities on this subject. Such powers of encroachment are distinguishable from others, held not to be limited by an ascertainable standard, where the criterion was indefinite and subjective, such as for the "happiness," or "pleasure," or "desire" of the beneficiary. *Merchants Bank* v. *Commissioner,* 320 U. S. 256; and *Henslee* v. *Union Planters Bank,* 335 U. S. 595.

2. We think also that here the possibility that an encroachment would occur to defeat the flow of income to the primary beneficiary was so remote as to be negligible.

Our interpretation of section Four of each of the trust instruments is that the trust principal was not to be used, unless the life beneficiaries' other resources should prove insufficient to meet specified contingencies which did not exist at the time when the gifts in trust were made. None of the trust instruments effected an absolute gift of support and maintenance that was made a charge upon both income and principal; but, rather, the gift was of income, coupled with a provision in a separate section that the corporate trustee was authorized to encroach upon the principal, from time to time in its discretion, to provide for certain specified circumstances. The value of the principal of each trust was only $21,645; and, if this yielded income at the rate of 4 per cent as used in the gift tax regulations, the annual income would be only about $866. All of the beneficiaries were, at the time of the creation of the trusts, adults enjoying an accustomed mode of living which required income greatly in excess of such amount; and it cannot reasonably be assumed that petitioner intended the trust principal to be consumed in providing their entire support. To the contrary, each of the trust instruments contained elaborate provisions for investment of the trust funds, for contingent remainders to unborn children, for trust administration for the benefit of remaindermen who might be minors, and also for cross-remainders. Our interpretation of the instruments as a whole, to the effect that other resources of the beneficiaries should be considered, accords with the practical interpretation of the trustee, as described in the testimony of the trust officer who had charge of the trusts. And it accords also, with the interpretation which the courts have applied in other cases, to trust instruments containing similar encroachment provisions. *Estate of Anna Finley Kenny, supra; Estate of Leonard O. Carlson, supra.* See also *Estate of Edwin E. Jack, supra; Berry* v. *Kuhl, supra; Commissioner* v. *Wells Fargo B. & U. Tr. Co., supra;*

*Commissioner* v. *Robertson's Estate, supra; Hartford-Connecticut Trust Co.* v. *Eaton, supra.*[3]

When, with this interpretation in mind, we look to the financial conditions of the several beneficiaries as of the date of the creation of the trusts, we find that each was living in a modest and comfortable, but not extravagant, manner; and that each possessed substantial other resources.

Hugh, Jr., who was 31 years of age, was an architect. He and his wife lived in a house which cost approximately $47,000 and was subject to a mortgage of about $15,000. He also owned unencumbered real estate which had a cost of $14,500. And, in addition, he was the beneficiary of a trust of $100,000, created by himself, which yielded him an income of approximately $5,700, and which he had the right to revoke in whole or in part at any time; of another trust of $21,500, created by his mother, which yielded him an income of approximately $975; and of still another trust of approximately $16,000, created by his mother, which was to terminate about 3 months after the present trusts were created. The total gross income of Hugh, Jr., and his wife for the year 1951 was $11,444.

Florence, who was 44 years of age and unmarried, was a registered nurse. She had marketable securities that had a value of approximately $20,000, and cash of approximately $1,000. Also she was the beneficiary of a trust of approximately $125,000, created by her grandfather, which yielded her an income of approximately $6,750, and of which the principal could, in the discretion of the trustee, be distributed to her at any time in whole or in part; of another trust of $21,500, created by her mother, which yielded her income of approximately $975; and of still another trust of approximately $17,000, created by her mother, which yielded her an income of approximately $764, and of which the principal was to be distributed to her approximately 3 months after the present trusts were created. The gross income of Florence for the year 1951 was $11,594.

Grace, who was 39 years of age, was the wife of a partner in a New York brokerage firm. She lived with her husband in a house which cost approximately $40,000 and was subject to a mortgage of approximately $17,000. She owned securities valued at approximately $20,000. And, in addition, she was the beneficiary of a trust of approximately $100,000, created by her grandfather, which yielded her an income of

---

[3] Since the intention of the present grantor is determinable, we regard it unnecessary to resort to local law. *Estate of Anna Finley Kenny,* 11 T. C. 857, 863. Nevertheless, in *Winkel* v. *Streicher,* 295 S. W. 2d 56, the Supreme Court of Missouri (the State in which the present trusts were created) recognized that the intention of the trustor must govern in each particular case; and that a distinction is to be made between situations where there is an absolute gift of support that is made a charge on both income and principal, and where the gift is of income, coupled with a provision for encroachment. See also the extensive review of cases on this subject in 2 A. L. R. 2d 1431.

about $5,500, and of which the principal could, in the discretion of the trustee, be distributed to her at any time in whole or in part; of another trust of $21,500, created by her mother, which yielded her an income of about $992; and of still another trust of approximately $13,000, created by her mother, which yielded her an income of about $614, and of which the principal was to be distributed to her approximately 3 months after the present trusts were created. The standard of living of her and her husband was comparable to that of the other members of the family.

Carroll, who was 36 years of age, was the wife of a St. Louis lawyer. They lived in a house which cost approximately $50,000 and was unencumbered. She owned securities valued at about $26,000 and cash of about $7,000. Also, she was the beneficiary of a trust of approximately $120,000, created by her grandfather, which yielded her an income of about $6,500, and of which the principal could, in the discretion of the trustee, be distributed to her at any time, in whole or in part; of another trust of approximately $21,500, created by her mother, which yielded her an income of about $975; and of still another trust of approximately $17,000, created by her mother, which yielded her an income of about $777, and of which the principal was to be distributed to her about 3 months after the present trusts were created. The total gross income of Carroll and her husband for the year 1951 was in excess of $30,000.

In addition, all of said children of the petitioner were joint beneficiaries of an insurance trust created by their grandfather, under which, upon the death of petitioner, they if living were to receive 20 per cent of the proceeds of insurance on his life in the amount of $100,000. It is obvious also, from all the foregoing, that these children were natural objects of the bounty, not only of their grandfather, but also of their father and mother who on the material date were each 70 years of age.

Computations which we have made indicate that, if the values of the several gifts of income here involved are computed in accordance with Regulations 108, section 86.19, as amended, without regard to the encroachment provisions, such values would be approximately:

| | |
|---|---|
| Hugh, Jr | $14,600 |
| Florence | 12,200 |
| Grace | 13,200 |
| Carroll | 13,800 |

Since we have determined that the possibility of encroachment on principal is so remote as to be negligible, it is our opinion based on the foregoing authorities that, notwithstanding such possibility, the above-mentioned values should be given effect. As was said by the Supreme Court in *Ithaca Trust Co.* v. *United States, supra* (279 U. S at 154, 155):

There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.

Like all values, as the word is used by the law, it [the value of property at a given time] depends largely on more or less certain prophecies of the future, * * * the value of the wife's life interest must be estimated by the mortality tables. * * *

The following cases, on which respondent relies principally, are distinguishable: *William Harry Kniep*, 9 T. C. 943, aff'd. 172 F. 2d 755 (C. A. 8); *Sylvia H. Evans*, 17 T. C. 206, aff'd. 198 F. 2d 435 (C. A. 3); *Jennie Brody*, 19 T. C. 126. In the *Kniep* case, the Commissioner did compute and determine a value for the present interest of the life beneficiary; the taxpayer presented no proof that such computation was erroneous, or that the possibility of encroachment was negligible; and the Commissioner's determination was approved. In the *Evans* case, also, the taxpayer raised no issue and presented no evidence whatever that the possibility of encroachment was so remote as to be negligible. And in the *Brody* case, the trustees had a power to accelerate distribution of the principal, which was not limited by any standard.

We hold, on the basis of all the foregoing, that the value of the income interests of petitioner's children in the trusts here considered are susceptible of determination; that the value of each such interest as of the date of the creation of the trusts was more than $3,000; and that, in computing petitioner's total gifts for the year 1951, there should be allowed four exclusions of $3,000 each in respect of such interests, pursuant to section 1003 (b) of the 1939 Code.

## II.

We shall next consider the fifth trust, which petitioner created in the year 1951 for the joint benefit of his grandchildren.

At the time when this trust was created, said grandchildren were, respectively, 18, 16, 13, and 9 years of age. The trust indenture provided, in substance, that the trustees should divide the trust estate into four equal shares for the respective benefits of said grandchildren; that, during the minority of said grandchildren, the trustees should "use and apply so much of the net income and also of the principal of their respective shares as they [the trustees] may deem necessary for their proper education, maintenance and support until they respectively reach the age of twenty-one years"; and that thereafter the income and principal should be disposed of in the manner specified.

In *Commissioner* v. *Disston, supra*, where the facts were similar to those here, the Supreme Court said (325 U. S. at 448–449):

The subsequent provision for payments for maintenance and support may be said to indicate a departure from the policy of accumulation only when necessary, in the reasonable discretion of the trustees. If that is the appropriate interpretation of the trust instruments, then little difference from the Fondren case is involved. * * * [In the *Fondren* case (324 U. S. 18) the interests of the life beneficiaries were held to be future interests.]

But, even though the trustees were under a duty to apply the income for support, irrespective of outside sources of revenue, there is always the question how much, if any, of the income can actually be applied for the permitted purposes. The existence of a duty so to apply the income gives no clue to the amount that will be needed for that purpose, or the requirements for maintenance, education and support that were foreseeable at the time the gifts were made. In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest. * * *

In the instant case, there is an "absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required."

We hold therefore, on the basis of the above-mentioned authorities, that the interest of each of petitioner's grandchildren in the trust here considered, must be deemed a future interest. Accordingly, no exclusion under section 1003 (b) of the 1939 Code is allowable in respect of such interests.

*Decision will be entered under Rule 50.*