J. J. NEWLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RUTH OWEN NEWLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64098, 64107, 67766, 67767. Filed November 28, 1958.

452

*Richard E. Williams, Esq.*, for the petitioners.
*Drew R. Tillotson, Esq.*, for the respondent.

OPINION.

PIERCE, *Judge:* Respondent determined deficiencies in gift taxes of the petitioners, as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 64098 | J. J. Newlin | 1952 | $15,447.60 |
| 64107 | Ruth Owen Newlin | 1952 | 15,447.60 |
| 67766 | J. J. Newlin | 1953 | 1,800.00 |
| 67767 | Ruth Owen Newlin | 1953 | 1,800.00 |

The cases were consolidated for trial.

The sole issue for decision is whether, in determining the total amount of taxable gifts made by each of the petitioners for each year involved, there should be allowed for each year, pursuant to section 1003 (b) (3) of the 1939 Code,[1] an exclusion of not to exceed $3,000 in respect of the "present interest" of each trust beneficiary for whose benefit a gift in trust was made. The answer to this problem will depend upon whether such "present interests" are susceptible of valuation.

All evidentiary facts have been stipulated; and they are here so found. The stipulations of fact are incorporated herein by reference. Said facts may be summarized as follows:

The petitioners, J. J. Newlin and Ruth Owen Newlin, are husband and wife, who reside at Johnston Station, Polk County, Iowa. Their

---

[1] SEC. 1003. NET GIFTS.

(b) EXCLUSIONS FROM GIFTS.—

* * * * * * *

(3) GIFTS AFTER 1942.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

gift tax returns for the years involved were filed with the director of internal revenue for the district of Iowa. In each of these returns, the petitioners elected and consented to have the gifts made by each of them to third parties, considered as having been made one-half by each petitioner.

On July 25, 1952, petitioner J. J. Newlin declared and created, by means of a written instrument designated "Trust Conveyance," an irrevocable trust to be known as the J. J. Newlin Trust, for the equal primary benefits of his two adult daughters and his adult son. And by this same instrument he irrevocably transferred to himself and his son as the initial trustees, and to their successors in trust, by gift and as the initial trust estate, 1,424 shares of the common capital stock of Pioneer Hi-Bred Corn Company of Des Moines, Iowa. He provided in said instrument that such shares of stock together with any additional property or assets which might thereafter be given or transferred to the trust, should be held and administered in trust, in accordance with the terms and conditions therein mentioned.

Said trust instrument read, in part, as follows:

KNOW ALL MEN BY THESE PRESENTS:

\*      \*      \*      \*      \*      \*      \*

WHEREAS, in order to enable his children to come into the immediate enjoyment of the benefits and the income of certain of his assets, said J. J. Newlin desires to declare and create a trust estate to be known as The J. J. Newlin Trust with respect to 1424 shares of the common capital stock of Pioneer Hi-Bred Corn Company of Des Moines, Iowa, for the benefit of his said children; and

WHEREAS, said J. J. Newlin contemplates the addition from time to time of other funds and/or properties to said trust estate.

Now, THEREFORE, in consideration of his love and affection for his daughters, Emily Newlin Bay and Vesta C. Newlin, and his son, Owen J. Newlin, the said J. J. Newlin does hereby declare a Trust, \* \* \*

ARTICLE I

*Trust Period*

The trust period shall commence on the date of the execution of this instrument and shall continue until the death of the survivor of the now living children of J. J. Newlin, unless sooner terminated as hereinafter permitted. Throughout the period of this trust estate the trustees, acting with the consent of all the then living children of J. J. Newlin, may terminate the trust estate, in which event the then assets of the trust shall be distributed as hereinafter provided.

\*      \*      \*      \*      \*      \*      \*

ARTICLE VIII

*Distribution of Income*

All net income, dividends, earnings and profits of and from the property of the trust hereby created and remaining after the payment of or due allowance for

all expenses of holding, managing or administering the same and any taxes which the trustees may be obliged or may elect to pay, shall be paid in equal shares to Emily Newlin Bay, Vesta C. Newlin, and Owen J. Newlin at such intervals as they may respectively request. In the event one or more of said beneficiaries should die during the trust period, the share of income of the deceased beneficiary or beneficiaries shall be paid, per stirpes, to the descending heirs of such deceased beneficiary or beneficiaries. If there are no descending heirs of any deceased beneficiary or beneficiaries, then the share of the income of the deceased beneficiary or beneficiaries shall be paid to the surviving beneficiary or beneficiaries, share and share alike.

### ARTICLE IX

#### *Distribution of Corpus*

The trustees may at any time during the period of the trust, with the consent in writing of all of the then living children of J. J. Newlin, distribute all or any part of the corpus of the trust estate hereby created. Any and all such distributions shall be made to the beneficiaries who are at that time entitled to receive the income of the trust and pro rata to their respective shares of income.

Upon the termination of this trust, the trust corpus, together with all additions thereto, including accumulated income, shall be distributed to the then income beneficiaries of the trust in the same proportions as they were entitled to distributions of trust income at the date of termination of the trust. If on the date of the termination of the trust there are no living income beneficiaries, as provided for in the preceding Article VIII, then the entire corpus of the trust, together with any accumulated income, shall be distributed to the heirs at law of J. J. Newlin according to the statutes of descent and distribution of the State of Iowa and as if J. J. Newlin had died seized of all the properties of the trust.

Other material provisions of said trust instrument (which for reasons of brevity are not here quoted) may be summarized as follows:

*Article III* granted to the trustees broad powers and authority with respect to the management of the properties composing the trust estate. However, nowhere in said instrument were the trustees or either of them, given any power or authority *in their sole discretion* during the period of the trust, either to invade or distribute any of the corpus of the trust estate for the benefit of any person whatsoever; or to withhold, or to alter or vary the equal income distributions to the specified beneficiaries. Nor were the trustees given any power, authority or discretion to terminate the trust, in whole or in part, without the unanimous consent of all then living children of the grantor (which group would necessarily include the named beneficiaries then living).

*Article VII* provided, in part, that neither the principal nor any income of the trust estate should be liable or in any manner chargeable for the debts of the beneficiaries; and that the beneficiaries should have no power to sell, transfer, encumber or in any manner anticipate, alienate or dispose of any interest in the trust estate or any income therefrom prior to actual payment thereof to the beneficiaries.

On June 12, 1953, petitioner J. J. Newlin made a further irrevocable gift in trust, for inclusion in said trust estate, consisting of an additional 80 shares of the common capital stock of said Pioneer Hi-Bred Corn Company of Des Moines, Iowa.

The fair market value of the common capital stock of the above-named company, as of each of the respective dates on which said gifts in trust were made, was $140 per share. Accordingly, the total value of said 1952 gift in trust, as of the time it was made, was $199,360; and one-half thereof, or $99,680, was, in accordance with the elections and consents of petitioners embodied in their gift tax returns, considered as having been made by each petitioner. And the total value of said 1953 gift in trust, as of the time it was made, was $11,200, of which $5,600 was considered as having been made by each petitioner.

Included in the stipulations of fact are the dates of birth of the three above-named adult children of the petitioners, who were named as beneficiaries of the trust; the attained ages of said children on each of the respective dates when the gifts in trust were made; and also the following statement:

8. Should it become material in these cases to compute the present worth or value of the interest in trust income of each of the three beneficiaries hereinafter named, then such valuation should be computed under the single life, three and one-half percent (3½%) table set out as Table I of Federal Gift Tax Regulations 108.

Petitioners and respondent agreed at the trial and on brief, that the right of each of said children-beneficiaries to receive income of the trust was a "present interest" or "non-future interest," as such terms are commonly used in applying section 1003 (b) (3) of the 1939 Code; and that all interests in the corpus of the trust were "future interests," within the meaning of said statute.

Based on the foregoing, if the above-quoted special provisions of articles I and IX which pertain to termination of the trust may here properly be disregarded for gift tax valuation purposes, the values of the "present interests" of the three named children-beneficiaries in said gifts in trust as of the respective dates on which said gifts were made, and also the values of the related remainder interests in said gifts in trust as of said dates, would be as follows:

| Beneficiary | 1952 gifts | | 1953 gifts | |
|---|---|---|---|---|
| | Value of "present interest" of beneficiary | Value of related remainder interest | Value of "present interest" of beneficiary | Value of related remainder interest |

GIFTS IN TRUST ATTRIBUTABLE TO J. J. NEWLIN

| | | | | |
|---|---|---|---|---|
| Emily Newlin Bay | $23,613.52 | $9,613.14 | $1,311.24 | $555.42 |
| Vesta C. Newlin | 24,880.13 | 8,346.54 | 1,384.27 | 482.40 |
| Owen J. Newlin | 25,340.65 | 7,886.02 | 1,410.87 | 455.80 |
| Total | 73,834.30 | 25,845.70 | 4,106.38 | 1,493.62 |
| 1952 total | | 99,680.00 | | |
| 1953 total | | | | 5,600.00 |

GIFTS IN TRUST ATTRIBUTABLE TO RUTH OWEN NEWLIN

| | | | | |
|---|---|---|---|---|
| Emily Newlin Bay | $23,613.52 | $9,613.14 | $1,311.24 | $555.42 |
| Vesta C. Newlin | 24,880.13 | 8,346.54 | 1,384.27 | 482.40 |
| Owen J. Newlin | 25,340.65 | 7,886.02 | 1,410.87 | 455.80 |
| Total | 73,834.30 | 25,845.70 | 4,106.38 | 1,493.62 |
| 1952 total | | 99,680.00 | | |
| 1953 total | | | | 5,600.00 |

Each of the petitioners, in his or her gift tax return for each of the taxable years, claimed an exclusion under said section 1003 (b) (3), in respect of the "present interest" of each beneficiary in that portion of the total gifts in trust for each year, which was considered to have been made by such petitioner. The respondent, however, disallowed all these exclusions; and, in his notices of deficiency for the first year involved, explained such action as follows:

(1) * * * The trust by its terms can be terminated at any time with the consent of all of the then living children of J. J. Newlin, therefore, the gifts of income from the trust cannot be valued and the claimed exclusions are not allowable.

With the foregoing facts before us, we turn to the question of whether the respondent's action in denying any exclusion in respect of any of the conceded "present interests" in the several gifts in trust involved, was proper.

The law is now well settled that, for gift tax purposes, gifts in trust are to be regarded as gifts to the beneficiaries, rather than to the trustees (*Helvering* v. *Hutchings*, 312 U. S. 393); and that a right given to a primary beneficiary to receive trust income currently is a "present interest," as distinguished from a "future interest" within the meaning of section 1003 (b) (3) of the 1939 Code. Also, it is clear from the provisions of said statute that, if such "present interest" has any determinable value whatsoever, the first $3,000 thereof must be excluded from the total amount of the donor's

gifts for the taxable year; and that the donor is entitled to as many such exclusions for the year of the gift as there are beneficiaries who received such "present interests."

In the instant case the petitioners and respondent have agreed, as above stated, that the rights of the several adult beneficiaries to receive income from the trust were "present interests"; and further, they have stipulated all the necessary factors by which the values of such "present interests" may be determined, if the special termination provisions contained in articles I and IX of the trust instrument may here properly be disregarded for valuation purposes. As shown above, the values so determined would be substantial—in the case of the 1952 gifts alone, the value of the "present interest" of each beneficiary in the gift of each petitioner would be in excess of $23,000. But the respondent determined that, solely by reason of said special termination provisions, none of such conceded "present interests" is susceptible of valuation; and therefore, that each of such "present interests" should in effect be assigned a zero value—notwithstanding that these interests necessarily constituted a substantial part of the gifts in trust which were valued and taxed to the petitioners for gift tax purposes. We think this was erroneous.

The valuation of life interests as well as remainder interests, in any trust, is necessarily subject to many uncertainties. For example, no one can determine as of the date of a particular transfer in trust, how long any life beneficiary may live; or whether the trust estate will appreciate, depreciate, or be lost entirely; or what income, if any, the trust estate may yield during each year of any beneficiary's life. Nevertheless in most cases, since the gift tax is an excise which is measured by the values of the gifts, it is essential that some value be determined for each life interest or for the remainder, or for both, if the statute is to be operative. Thus in order to meet this necessity, the applicable Treasury regulations for the gift tax, and also those for the estate tax, have provided that the values of life interests and of remainders shall be computed by use of actuarial tables which employ average life expectancies and arbitrarily assumed rates of income yield. See Regs. 108 (gift tax), sec. 86.19 (f), as amended; and Regs. 105 (estate tax), sec. 81.10 (i), as amended. As was said by the Court of Appeals for the First Circuit, in *McMurtry* v. *Commissioner*, 203 F. 2d 659, 666–667, affirming on this point 16 T. C. 168, 179–182:

The whole problem of valuing individual life interests by resort to mortality tables is at best a matter of educated guesswork. The courts cannot demand perfection in an area so fraught with speculation and uncertainty. * * * Such discrepancies as may exist will no doubt average out in the long run; and while this may sometimes prove to be unfortunate for individual taxpayers, the discrepancies may have to be suffered in the interest of a simplified overall administration of the tax laws. * * *

Frequently, when properties are placed in trust, the donor being aware of the uncertainties of our world and of the changing capabilities of beneficiaries, incorporates special provisions in the trust instrument, which may introduce an additional element of uncertainty in valuing the gifts in trust. Nevertheless, the inclusion of such special provisions does not invariably require complete abandonment of the actuarial method of valuing estates for life or for years, in the manner specifically prescribed by the Treasury regulations. For example, it has been recognized that the inclusion of a "spendthrift" clause in a trust instrument, even though it does restrict the beneficiary's power of alienation and therefore affects the value of his interest. should be disregarded in valuing such interest for gift tax purposes. through use of the prescribed actuarial tables. To this effect, see Revenue Ruling 54–344, 1954–2 C. B. 319, wherein it is stated:

> A gift of the present right to enjoy the income from a trust corpus for a period of years or for life will not be held to be one of a future interest in property solely because of the inclusion of a provision or clause which prohibits the income beneficiary from alienating, assigning or otherwise anticipating such income. * * *
>
> Where a donor transfers property in trust to pay the income therefrom to a named beneficiary for a term of years or for life, and there exists no discretion in the trustees nor any other factor which make uncertain or postpones the immediate enjoyment of the income, there is a gift of a present interest in the property to such beneficiary *to the extent of the value, computed actuarially,* of the right to receive such income for the full term or for the life of the beneficiary against which the $3,000 gift tax exclusion authorized by section 1003 (b) (3) of the Internal Revenue Code may be applied. * * * [Emphasis supplied.]

Other situations in which the courts have disregarded special provisions of trust instruments, for gift tax valuation purposes, include the following: Where a particular trust instrument provided that the trust income was not to be distributed until the end of each year and then was to be distributed, first in fixed amounts to the settlor's four sisters and the balance in equal shares to such of the settlor's children as should be "then living" (so that neither the number of the income beneficiaries nor the amounts of the shares of the children-beneficiaries as of the end of any particular year were ascertainable at the time of the gift), it was held that the interest of each beneficiary was nevertheless a "present interest" susceptible of valuation (presumably by the prescribed actuarial tables), in respect of which an exclusion was allowable. *Commissioner* v. *Lowden*, 131 F. 2d 127 (C. A. 7), affirming a Memorandum Opinion of this Court. Also, where the provisions of a particular trust instrument gave the trustee power to invade corpus and make distributions therefrom to the beneficiaries if the trust income proved insufficient for such beneficiaries' needs, it was held that the trustee's power to invade should be disregarded for gift tax valuation purposes, upon a showing that the exercise of such power, though possible, was highly unlikely to occur; and, that the values of the

beneficiaries' "present interests" should be computed by use of the prescribed actuarial tables. *Hugh McK. Jones,* 29 T. C. 200, acq. 1958-2 C. B. 6. See also in this connection, this Court's recent decision in *Frances Carroll Brown,* 30 T. C. 831, wherein it was held that the income beneficiaries of a trust had "present interests" susceptible of valuation (presumably by the prescribed actuarial tables), notwithstanding that the trustees had been given power in their discretion to allocate any of the trust income to principal. Such discretionary power was regarded as having been given solely for the purpose of facilitating administration of the trust; and it was explicitly disregarded for valuation purposes.

In the light of all the foregoing, it is our opinion that the values of the conceded "present interests" in the instant case should be determined without regard to the special termination provisions contained in articles I and IX of the trust instrument, by use of the actuarial table mentioned in the stipulation of the parties. Here, we are not dealing with contingent gifts of trust income, over which either the donor or the trustees or any other person had power, in his or their sole discretion, to withhold income distributions, or to divert income from one beneficiary to another, or to reduce the flow of trust income by distributing the income-producing corpus. To the contrary, each of the adult children-beneficiaries here involved was given an equal one-third interest in the trust income for life, which could not be varied by the trustees and also could not be terminated except by the unanimous consent of both of the trustees plus all living children of the petitioners, including the particular beneficiaries who held such life interests. Thus, each life beneficiary was in effect given a *power to veto* any possible proposal for termination of the income interest which the donor had given to him. And such power of veto was not for the use of the trustees in administering the trust estate; but obviously it was given by the donor to the beneficiaries for their benefit, and as a means for protecting their respective life interests. Viewed from a practical standpoint, it is clear that the value of the gift of each life interest, when coupled with the gift of such power of veto, was greater and not less than would have been the value of such interest without such protective power. And, just as the existence of a "spendthrift" clause which theoretically reduces the value of a life interest is disregarded for gift tax valuation purposes—so, we believe, the existence of the special termination provisions here involved, which theoretically tended to increase the values of the beneficiaries' "present interests," should be disregarded for gift tax valuation purposes. To say that the life beneficiaries' conceded "present interests" in the substantial gifts here involved cannot be valued under the gift tax statute and in accordance with the actuarial method of valuation prescribed by the applicable Treasury regulations, and hence that

none of the exclusions which Congress has provided in respect of such "present interests" can be allowed, is unrealistic.[2]

Finally it is to be observed that all the cases upon which the respondent has principally relied, are distinguishable on their facts by reason of the provisions of the particular trust instruments involved therein. Foremost among these cases are: *Kniep* v. *Commissioner*, (C. A. 8) 172 F. 2d 755, affirming 9 T. C. 943; *Evans* v. *Commissioner*, (C. A. 3) 198 F. 2d 435, affirming 17 T. C. 206; *Herrmann* v. *Commissioner*, (C. A. 5) 235 F. 2d 440, affirming T. C. Memo. 1955–212; *Jennie Brody*, 19 T. C. 126; and *Fred J. LaFortune*, 29 T. C. 479, on appeal (C. A. 10). All these cases involved *contingent gifts* of trust income, in that the donor had given *to the trustee* a power under which he could *in his sole and uncontrolled discretion* diminish or destroy the gifts of income, by distributing the income-producing corpus; and in none of these cases did the donor, as did the present donor-petitioners, give the beneficiaries a power for their own benefit, to veto such action and thereby protect and preserve their income interests. We think these differences between said line of cases and the present case are crucial; for in those cases the quantum of each gift of income was subject to the control of a person other than the donee, while here the gift to each life beneficiary was coupled with a power in him to protect his interest inviolate.

Furthermore, the principle of the above-mentioned line of cases has, in effect, been "overruled" by Congress for gifts made subsequent to the year 1954.[3] It is our opinion that such principle should not be

---

[2] Here, the respondent actually did value, indirectly and without use of the prescribed actuarial tables, the "present interests" involved, in imposing the tax upon the petitioners; for he lumped together the "present interests" and the remainder interests, and then determined the value of the whole (without any breakdown), in the same manner as if the gift of all interests had been made to the trustees. But, as heretofore pointed out, the gifts in trust are to be regarded as gifts to the beneficiaries, rather than to the trustees. *Helvering* v. *Hutchings*, 312 U. S. 393.

Valuation of the gifts to the several beneficiaries is necessary, not only in order to determine what exclusions are allowable under section 1003 (b) (3) of the 1939 Code; but may be necessary also to fix the extent of the secondary liabilities of such donee-beneficiaries under section 1009 of said Code, in the event the primary gift tax liabilities cannot be collected from the donors.

[3] See section 2503 (b) of the 1954 Code, pertaining to exclusions from gifts, which provides in part:

"Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power *shall be disregarded* in applying this subsection, if no part of such interest will at any time pass to any other person." (Emphasis supplied.)

See also S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 478, pertaining to the bill for the 1954 Code, which states in part with reference to section 2503 thereof:

"Subsection (b) of this section corresponds to section 1003 (b) (3) of the 1939 Code in the House bill, but your committee has made a substantive amendment. *Certain court decisions* have indicated that, although a gift may be made in trust of the present right to receive income, if powers are given *to the trustee in his uncontrolled discretion* to pay over the trust principal to the income beneficiary, the income interest is not susceptible of determination and, therefore, is to be treated as a gift of a future interest. Your committee believes that *such determinations, in certain instances, may reach undesirable results.* Accordingly, subsection (b) has been modified by your committee * * * ." (Emphasis supplied.)

extended to a situation like the present, in the absence of any statute, regulation, or other authority specifically requiring such extension.

We hold that the conceded "present interest" of each income beneficiary in each of the gifts in trust here involved, should be valued without regard to the special termination provisions of articles I and IX of the trust instrument; and that such values should be determined by use of the prescribed actuarial table mentioned in the stipulation of the parties. Also, we hold that an exclusion for each such "present interest," computed under section 1003 (b) (3) of the 1939 Code with respect to the value thereof so determined, should be allowed.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

TIETJENS, *J.*, dissents.