Raymond J. **FUNKHOUSER'S TRUSTS,**
Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

No. 7922.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 5, 1959.

Decided Jan. 14, 1960.

Mannes F. Greenberg, Baltimore, Md. (John W. Cable, III, and John S. Mc-

Daniel, Jr., Baltimore, Md., on the brief), for petitioners.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice Washington, D. C., on the brief), for respondent.

Before SOPER and BOREMAN, Circuit Judges, and R. DORSEY WATKINS, District Judge.

R. DORSEY WATKINS, District Judge:

### Question Presented

The Commissioner of Internal Revenue (Respondent) held that under the terms of certain trusts created by Raymond J. Funkhouser (hereinafter, Petitioner) $3,000 exclusions were not allowable under the Internal Revenue Code of 1939, 26 U.S.C. § 1003, for each gift to such trusts by Petitioner in the years 1948, 1950, 1951, 1952 and 1953. The Tax Court affirmed.[1] We agree with the result reached by the Tax Court.

### Position of the Parties

Petitioner over the years 1948, 1950, 1951 and 1953 established seventeen separate trusts for his five children and twelve grandchildren. Separate gifts were made to the various trusts in 1948, 1950, 1951, 1952 and 1953. As to each gift and each year, the Commissioner determined that no exclusions were allowable, since they were gifts of future interests. Petitioner and the trustees under sixteen of the various trusts contend that a portion of each gift was of a present interest, namely, the gift to each beneficiary of an interest in trust income. Respondent counters that even were this so, there is no method of valuing such interest or right.

The deficiencies claimed relate only to alleged gift tax liability for the years 1952 and 1953. However, the gifts in prior years must be considered, because increases in the taxable amounts of the gifts in prior years will tend to increase the rate of gift tax applicable to 1952 and 1953.[2]

The case was tried in the Tax Court entirely upon stipulations.

The parties are in agreement that if the Tax Court is in error, none of the petitioners is liable for any gift tax. The parties have further agreed upon the extent of liability if the Tax Court is affirmed.[3]

### Discussion

The trusts created by Petitioner are irrevocable, and are identical in terms except for designation of the respective beneficiaries. Article Fifth contains the critical provisions, which so far as relevant are as follows:

"1. For a period ending twenty-one (21) years after the death of the survivor of the Grantor's children * * * or until the death of the last surviving descendant, if the same shall occur prior to the expiration of said period, the Trustees shall collect the dividends and interest from the trust fund, and * * * shall distribute and pay over the same forthwith as follows:

"(a) To * * * [the particular named initial income beneficiary] for and during [his or her] life; and after [his or her] death to [his or her] descendants living at the time of each payment in equal shares per stirpes and not per capita."

\* \* \* \* \* \*

"3. Notwithstanding anything herein to the contrary provided, the Trustees are authorized in their absolute discretion from time to time to pay over to or expend on behalf

---

1. T. C. Memo. 1958-222 (Harron, J.).

2. The parties so agree, in view of Commissioner v. Disston, 1945, 325 U.S. 442, 446, 449, 65 S.Ct. 1328, 89 L.Ed. 1720.

3. It is therefore not necessary to consider the fact that the 1948 gifts were reported under 26 U.S.C. § 1000(f) as made one-half by petitioner and one-half by his wife. The underlying principle would not, in any event be affected.

of any person who is an income recipient hereunder at the time, such sum or sums from the principal of the Trust as they shall deem necessary or advisable to provide for any illness or other emergency affecting such person who is an income recipient hereunder at the time or any member of his or her immediate family, or to provide for the care, maintenance, support or education of such person or any member of his or her immediate family."

In each trust the trustees were thus given the absolute discretion to invade to the point of extinction the corpus of the trust, and thus destroy the interest of the initial income beneficiary in income to the extent of such invasion, not merely to provide for "any illness or emergency affecting" any "person who is an income recipient at the time * * * or to provide for the care, maintenance, support or education of such person"; but the same right was given, for the same purposes, with respect to "any member of his or her immediate family." There is no evidence in the record that the use of corpus for either class was so remote as to be negligible.

The Internal Revenue Code of 1939 (26 U.S.C.) provides:

"§ 1003. Net gifts.

"(a) *General definition.* The term 'net gifts' means the total amount of gifts made during the calendar year, less the deductions provided in section 1004.

"(b) *Exclusions from gifts.*

\*   \*   \*   \*   \*   \*

"(3) [as added by Sec. 454 of the Revenue Act of 1942, c. 619, 56 Stat. 953] *Gifts after 1942.* In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for

the purposes of subsection (a), be included in the total amount of gifts made during such year."

■ It was conceded that the interests of the beneficiaries in the principal of the trusts were future interests, for which no exclusion is allowed. It was further agreed that the unqualified right to receive income for life or other ascertainable periods is a present interest. But where the taxpayer claims an exclusion of a present interest:

"The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest * * *" Commissioner v. Disston, 1945, 325 U.S. 442, 449, 65 S.Ct. 1328, 1331, 89 L.Ed. 1720.

The "right" of the income beneficiaries to receive income was dependent upon the existence and amount of a corpus from which the income was to be derived. There was no certainty as to duration, or amount. The corpus of any trust could have been reduced at any time, in any amount (with corresponding reduction of income productivity), not simply for the needs of an income beneficiary but for those of any member of his or her immediate family.

Petitioners' contention that their income interests should be valued as life estates [4] because their interests could only be increased, as distinguished from decreased, by distributions of corpus, is without merit.

Under the trusts, no beneficiary had any life interest in the income from any ascertainable amount of corpus. That corpus could be reduced or wiped out at any time. Such reduction or elimination could be on behalf not only of the income beneficiary but of any member of his or her immediate family. Further, to the extent that any distribution (whether directly to or for the income beneficiary or on behalf of a member of his or her immediate family) could be

---

4. The stipulation contains computations of the "Value of the right to receive income for life from and after December 30, 1950, *from property of stated value.*" (Emphasis supplied).

considered an increase in the income beneficiary's income interest, this would come from corpus, and the gifts of corpus admittedly were gifts of future interests, excluded in valuing the beneficiary's interest in income when the trust was created.

The principles of the decided cases support the foregoing conclusions, and the decision of the Tax Court.

In Kniep v. Commissioner, 8 Cir., 1949, 172 F.2d 755, a trust provided for the payment currently to the beneficiaries of the trust income, and a proportionate share of the corpus was to be distributed to each upon arrival at the age of sixty years. The trustees were authorized to use corpus up to $1,000 for the proper maintenance and support of, or to provide against any emergency encountered by, any beneficiary. The court approved the Commissioner's computation of the present worth of the gifts of income on the basis of a trust corpus reduced by the maximum permitted invasion, saying (at pages 757–758):

"* * * The argument [of the taxpayer] is that, if article V is to be given any effect in the determination of the amount of exclusions allowable under section 1003(b) (3), the necessary result would be to increase rather than to diminish the present worth of the gifts of present interests. * * *

* * * * *

"* * * The taxpayer has the burden of proving not only his right to the claimed exclusion, but also the amount of it. Commissioner v. Disston, supra, 325 U.S. at page 449, 65 S.Ct. at page 1331, 89 L.Ed. 1720, 158 A.L.R. 166. The insuperable difficulty with which the petitioner is confronted is that it is impossible for him to prove that the principal of the trust estate, and thus the income from it, will not be decreased by the exercise of the discretionary power of invasion granted to the trustees; or to prove the amount by which the principal, upon which the present worth of the right to re-

ceive income must be computed, may be reduced by the exercise of the trustees' power of invasion."

On the contention there made, as here, that any distribution must enlarge the income beneficiary's interest, the court said (at page 757):

"* * * the right to receive principal through the power of the trustees to invade it is a future interest * * *"

In Evans v. Commissioner, 3 Cir., 1952, 198 F.2d 435, trust income was currently payable to each child of the donor for life, the trustees being given uncontrolled discretion to use such amount of principal as they deemed necessary for the education, comfort and support of such child, or the spouse or children of such child. The trust also authorized each child after reaching thirty years of age to withdraw principal not exceeding $1,000 each year. Relying upon Sensenbrenner v. Commissioner, 7 Cir., 1943, 134 F.2d 883 and Fisher v. Commissioner, 9 Cir., 1942, 132 F.2d 383, the court denied the claimed exclusions for the right to trust income, saying (198 F.2d at page 437):

"In brief, the terms of the present trust may enable us to ascribe a minimum combined value to the present and future interests of each beneficiary. But we cannot ascertain their values separately. Neither are we justified, for gift tax purposes, in treating them as if merged into a single present interest. The donor expressly divided the rights of each beneficiary into those of present and those of future enjoyment and must, accordingly, accept the tax consequences of that division."

In Herrmann's Estate v. Commissioner, 5 Cir., 1956, 235 F.2d 440, the donor had created irrevocable trusts for his minor grandchildren, providing for the distribution of the annual net income, and authorizing the trustee to distribute to each beneficiary any or all of the corpus to the extent deemed necessary or advis-

able for the education, maintenance and support of the beneficiary. The trusts were to terminate as to each beneficiary upon reaching the age of twenty-five years. The court pointed out the two-fold nature of the transaction; one an interest in income, the other in principal. The gifts of principal were clearly future. Although the requirement to pay income annually was unconditional, the authorized reductions of principal made it impossible to assign a present value to the income interest. The court said (at pages 444–445):

> "* * * Where, as here, the trustee is authorized to distribute all or any part of the principal, the distribution, be it little or much, would result in a ratable reduction in the trust income and a proportional reduction in the income producing potential of the trust res. Since it cannot be known, at the creation of the trust, what part, if any, of the trust principal will be distributed, or when, if ever, any principal distributions will be made, there is no basis or formula by which the future interest can be valued, and the taxpayers are unable to meet the burden imposed on them to establish a value."

In La Fortune v. C.I.R., 10 Cir., 1958, 263 F.2d 186, the power of the trustee to terminate the trust at any time the trustee deemed it for the best interest of the beneficiary, and to distribute it to him, was held to make it impossible to value the income interest. Petitioner again advanced the argument that accelerated termination of the trust could not change the size or value of the present right to income. It was again rejected.

The court said (at pages 192–194):

> "The value of a present right to income given in trust is calculated by multiplying the expected annual return by the probable period over which it will be paid. In the case of the 1951–2 gifts the probable period over which the income will be paid is uncertain because the trustee has the discretionary right of termina-

tion. An integral element of the formula is unknown.

> "* * * Appellants rely on the theory of the Tax Court dissents. It is argued that the accelerated termination of the trust can only have the effect of investing the beneficiary with the title to the corpus and cannot change the size or value of the present right to income. As heretofore noted separate consideration must be given to the gift of the corpus and to the gift of the income. A separate valuation of each is necessary. The theory that the valuation of the right to income is not affected by the circumstance of an accelerated distribution of principal overlooks the difference between income received by an owner as the result of absolute ownership of property and income received by a trust beneficiary as the result of payments to his trustee from the proceeds of trust investments. The two are different in legal contemplation. The possibility of a future merger of the corpus and the right to income does not justify the conclusion that the value of the right to income is the same whether derived from the trust or from ownership because it ignores the distinction between income from ownership and income from a trustee to his beneficiary * * *.

> \* \* \* \* \* \*

> "* * * We conclude that the Tax Court correctly held that the rights to income under the 1951–2 gifts were incapable of valuation and hence were not subject to the claimed exclusion."

The decision of this court in United States v. Baker, 4 Cir., 1956, 236 F.2d 317, 319, is not to the contrary. There, trusts were created for the donors' minor grandchildren, "the net income and principal" to be used for the support, education and benefit of each beneficiary "in such amounts and manner and at such times as shall be in accordance with the needs and best interests of the benefici-

ary and as if the Trustee herein were holding the properties as Guardian of the beneficiary and making distributions of the properties in that capacity for the needs and benefit of the beneficiary. It is the intention of the Grantor to make, and the Grantor does hereby make, an immediate and present gift to the beneficiary of the use and benefit of the properties."

The trust agreement also provided for distribution of "all properties not used for the aforesaid purposes" to each beneficiary on the twenty-first anniversary of his birth, and further provided that if he should die before that time the trust property should pass as part of the beneficiary's estate, excluding the donor.

The trust agreement was to be construed and the trust estate administered under the laws of North Carolina. The Commissioner disallowed the claimed exclusions on the grounds that the gifts were of future interests. The appellees paid the deficiencies so determined, claims for refunds were filed and denied, and suit was instituted in the district court which entered judgment for the appellees, which judgment was confirmed on appeal.

After mentioning that "[a]lthough not controlling, it is of some significance that the donor * * * expressed his intention to make 'an immediate and present gift to the beneficiary' ", this court pointed out that "It was conceded by appellant in argument that an outright gift by a donor to the guardian of a minor would be the gift of a present and not a future interest under the terms of the statute." The trust agreements not only created no barrier to the present enjoyment by the infants of the trust funds beyond those established by the laws of North Carolina, but in fact removed certain of those barriers, since the trustee, although empowered to deal with the funds as if a guardian, was not, as a guardian would

be, under North Carolina law, required to secure the approval of any court.

" * * * Here the right of the beneficiaries to present enjoyment of both the corpus and the income is not different from what it would be if the gifts had been made directly to each of them [the infant beneficiaries], or to a guardian for their benefit. There is no magic in mere words. These gifts to a trustee, since they conferred on the beneficiaries the same right to present enjoyment which they would have had if the gifts had been made to a guardian for them, must be judged by the same standard as that applied to gifts made to a guardian." 236 F.2d at page 320.

"We believe that the gifts made by appellees were equivalent to outright gifts by them to the infant beneficiaries * * *." (236 F.2d at page 321.)

The other citations of petitioners have also been considered, but they are likewise inapposite. Where a present right, although based upon a contingency (remarriage of a widow) is actuarially determinable, Du Charme's Estate v. Commissioner, 6 Cir., 1947, 164 F.2d 959, Commissioner v. Maresi, 2 Cir., 1946, 156 F.2d 929, such value should be recognized.

Newlin v. Commissioner, 31 T.C. 451, decided slightly more than one month before the decision of the Tax Court herein, is not inconsistent [5] with that decision. In the Newlin case, the present interests in income were terminable only with the consent of the trustees and all living beneficiaries. This veto power was, understandably, held to justify treating the life income interests as susceptible of valuation.

For the foregoing reasons, the decisions of the Tax Court are

Affirmed.

5. Our problem and function is not to reconcile, criticize or review all decisions of the Tax Court, but only to determine the validity, vel non, of the particular decision under review.