**Robert A. JOLLEY, Sr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 5016.**

United States District Court

D. South Carolina,

Greenville Division.

Sept. 29, 1966.

Robert A. Dobson, Jr., and Robert A. Dobson, III, Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., and James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Plaintiff was assessed a tax deficiency on a gift tax return for 1960. The deficiency was paid; claim for refund was filed; and suit for refund was instituted.

On June 10, 1960, the taxpayer transferred certain stocks and bonds in trust in favor of his three adult children: Robert A. Jolley, Jr., age 39; James E. Jolley, age 33; Mamie Jolley Bruce, the mother of two minor children and the only parent among the beneficiaries. They were named trustees as well as the prime beneficiaries.

The trust broadly provides, with certain qualifications, that the corpus of the trust is to be held for a period of ten years to be distributed at the expiration of the period to the three adult children beneficiaries. The income of the trust is to be distributed monthly or quarterly throughout the existence of the trust to the three beneficiaries. This dispute arises over the question whether the gifts of the income interest in the trust qualified for the annual gift tax exclusion as provided in Section 2503(b).[1]

---

1. 26 U.S.C.A. § 2503(b) (1955): Exclusions from gifts.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person.

The dispute will be resolved by interpretation of the terms of the trust instrument. If the gifts qualify for the exclusion the taxpayer is entitled to a refund of the assessment.[2] The defendant contends that the gifts fail to qualify because (1) the gifts are limited to commence in use, possession or enjoyment at some future date or time because either (a) the corpus may be distributed to other than the income beneficiaries or (b) the trustees have the discretionary power to withhold income, or both; and that (2) the language of the instrument renders the gift of income interest incapable of evaluation. The plaintiff contends that the defendants interpretations are erroneous; and that even if true the prospect of exercising the powers are so remote as to make them negligible; and that, since all trustees are beneficiaries and all must concur in any action, the veto power of one trustee to protect the present enjoyment of income effectively converts the powers to merely matters of form and of no substance.

The disputed portions of the trust instrument are as follows:

## ITEM III

The Trustees bind themselves to hold the above-mentioned property and any other property which may be conveyed to them pursuant to the terms of this agreement, in trust, subject to all the powers and duties hereinafter set forth:

(1) All net income of the trust remaining after payment or provision for taxes, necessary and proper expenses, and for obligations of the trust shall be paid over in either monthly or quarterly installments to Robert A. Jolley, Jr., James E. Jolley and Mamie Jolley Bruce in equal shares.

(2) Should either Robert A. Jolley, Jr., James E. Jolley or Mamie Jolley Bruce die prior to the termination of this trust, my Trustees thereafter shall pay over and distribute to the issue then living of said decedent, per stirpes, any payment or distribution of income which would have been made to said decedent if he or she were then living; and in default of such issue, to the surviving beneficiaries in equal shares.

(3) The Trustees may in their discretion and at any time, or from time to time, use all or any part of the corpus of this trust for the support, maintenance, education, comfort and benefit of any of the issue of Robert A. Jolley, Jr., James E. Jolley or Mamie Jolley Bruce. The determination of my Trustees as to the advisability of making any such payment of corpus shall be final and binding upon all persons then or thereafter interested in the trust.

(4) This trust shall terminate on July 1, 1970, at which time all of the corpus and accumulated income of the trust shall be distributed in equal shares to Robert A. Jolley, Jr., James E. Jolley and Mamie Jolley Bruce to be their property absolutely.

(5) If, on July 1, 1970, either Robert A. Jolley, Jr., James E. Jolley or Mamie Jolley Bruce shall be deceased, then the share of such deceased beneficiary shall go to his or her issue in equal shares, per stirpes; and in the absence of such issue, shall be divided equally between the two other beneficiaries, if living, and otherwise to their surviving issue per stirpes.

\* \* \* \* \* \*

## ITEM IV

The Trustees shall have and are hereby given the following powers:

(1) The power to purchase securities or property from, and also to make loans and advances to, the Executor or other representative of

---

2. If the taxpayer prevails in his claim he will, concededly, be entitled to three exclusions under Helvering v. Hutchings,

312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909 (1945).

the Grantor's estate, irrespective of the occupancy by the same party of dual positions, if, in the sole discretion of the Trustees such advances, purchases, or loans are to the best interests of the beneficiaries of this trust. Such loans or advances may be secured or unsecured, and the Trustee shall not be liable in any way for any loss resulting to the trust estate by reason of the same having been made.

\* \* \* \* \* \*

(4) To borrow money in their name as Trustee or jointly with the owners of any outstanding interest in any of the trust property, and to pledge, mortgage, and convey by deed of trust or other proper conveyance, as the case may be, either separately or jointly with the owners of any outstanding interest therein, all or any part of the trust property as security for the repayment of such loan or loans, without any duty or liability upon the part of the lender to see to the application of the proceeds of such loans, and to repay the same out of income or corpus as in their judgment may appear to the best interests of the trust estate.

By consent of parties and with the approval of the court the case was submitted for decision upon briefs and depositions. The defendant has before the court a motion to exclude certain testimony contained in the various depositions.

For some years prior to the creation of the trust the taxpayer made annual gifts to his children valued at approximately $6000 per year. Substantial gifts had also been made to the grandchildren of the taxpayer, the children of Mamie Jolley Bruce. For several years the taxpayer had contemplated creating such a trust, and when a trip abroad became imminent he had his attorneys, who were knowledgeable in tax matters, create the trust. The transfer in trust was the form chosen in order to prevent an unequal distribution among the children which may have resulted from a division of the stocks and bonds which constituted the gifts.

Section 2503(b) [3] expressly limits the annual exclusion of the first three thousand dollars of gifts made during the taxable year to gifts "other than gifts of future interests in property"—or—a "present interest in property." The distinction between the present interests in property and the future interests in property which the statute contemplates has been set forth many times and was stated in Fondren v. Commissioner of Internal Revenue, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668 (1945), as follows:

[I]t is not enough to bring the exclusion into force that the donee has vested rights. In addition he must have the right presently to use, possess or enjoy the property. These terms are not words of art, like "fee" in the law of seizin, \* \* \* but connote the right to substantial present economic benefit. The question is of time, not when title vests, but when enjoyment begins. Whatever puts the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment makes the gift one of a future interest within the meaning of the regulation.

The same idea is expressed in the Treasury Regulations on Gift Tax (1954 Code) Section 25.2503(a) which provides in part that:

"Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession or enjoyment at some future date or time.

The present interests the taxpayer asserts is the income interest on the trust

3. 26 U.S.C.A. § 2503(b) (1955), note 1 supra.

which is to be distributed in either monthly or quarterly installments according to Item III(1) of the trust.[4]

■■ The income of a trust which is required to be distributed periodically is a gift of present interest, Fondren v. Commissioner of Internal Revenue, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668 (1945), however, the gift interest must not only be "present" but one capable of evaluation. See Herrman's Estate v. Commissioner of Internal Revenue, 235 F.2d 440 (5th Cir. 1956). The income interest of a trust is capable of being evaluated in accord with the provisions of Treasury Regulation Section 25.2512-5; and the computations have been made in this instance, showing the income interest to be over three times the amount of the annual exclusion. This computation has been stipulated by the parties subject, however, to the defendant's contention that other provisions in the trust agreement render the gifts so uncertain that they cannot be evaluated actuarially or by any other method. The objections that the defendant has raised, as has been mentioned, are that (1) the trustees have a discretionary power to invade corpus leaving any income interest uncertain, and (2) that the trustees have the power to withhold income.

In *Herrman's Estate* [5] the court, in denying an exclusion because of the taxpayer's failure to establish the allocable value of the admittedly present gift of income, stated:

> Where, as here, the trustee is authorized to distribute all or any part of the principal, the distribution, be it little or much, would result in a ratable reduction in the trust income and a proportional reduction in the income producing potential of the trust res.

Since it cannot be known, at the creation of the trust, what part, if any, of the trust principal will be distributed, or when, if ever, any principal distributions will be made, there is no basis or formula by which the future interests can be valued, and the taxpayers are unable to meet the burden imposed on them to establish a value.

The plaintiff contends that the trustees *do not* have *the power* to distribute corpus to any one other than income beneficiaries. In *Herrman's Estate* the trustee powers were to distribute all or any part of the principal. In this case the power to invade corpus, of which the defendants speak, must be in the powers of Item III, Numbers 2 and 3. In 2 it is provided that "should either [child] die prior to the termination of this trust, [the] * * * trustees thereafter shall pay over and distribute to the issue then living of said decedent, per stirpes, any payment of income which would have been made to said decedent if he or she were then living; and in default of such issue, to the surviving beneficiaries in equal shares." And 3: "The Trustees may in their discretion and at any time, or from time to time, use all or any part of the corpus of this trust for the support, maintenance, education, comfort and benefit of any of the issue of * * * [the named beneficiary]."

The plaintiff staunchly maintains that when he used the word *issue* he meant *issue:* that issue of an ancestor, unlike children, cannot be determined until the ancestor expires, Boston Safe Dep. & Trust Co. v. Park, 307 Mass. 255, 29 N.E.2d 977 (1940). Since no corpus can be distributable to issue prior to the death of the child, at which time the

---

4. See Herrman's Estate v. Commissioner of Internal Revenue, 235 F.2d 440 (5th Cir. 1956), where it was said, at 443, that: "the disposal of property in trust under an agreement deferring distribution of principal may be regarded, for Federal gift tax purposes, as a two-fold transfer creating one interest in the income and another in the principal. Either or both

may be present interests to which the exclusion would be applicable, and either or both may be future interests with respect to which the exclusion would be denied. The fact that one of these may be regarded as a future interest does not of itself prevent the other from being a present interest."

5. 235 F.2d 440 (5th Cir. 1956).

issue succeed to income beneficiaries per stirpes, it is argued, the trustees cannot distribute corpus to persons other than the income beneficiaries.

In order to bring the trust under the proscription of the cases cited by him, the Commissioner would construe the words "issue" as used in the instrument to mean neither the legal meaning of issue, nor the meaning ascribed the word by the taxpayer, but a loose, non legal usage of the word to mean simply children. The taxpayer contends that it means surviving children; that the class, thusly, cannot be determined until the death of a prime beneficiary. This meaning is much more in line with the legal meaning of the term as stated in Green v. Green, 210 S.C. 391, 395, 42 S.E.2d 884, 886 (1947), as being in the "whole line of lineal descendants to the remotest generation." See also First Carolinas Joint Stock Land Bank v. Deschamps, 171 S.C. 466, 172 S.E. 622 (1934).

The Commissioner argues that the settlor has clearly shown on the face of the instrument an unequivocal intention to use "issue" to mean all of his grandchildren living at the time of the creation of the trust, or those born later during the term of the trust. This, it is argued, is shown by the use in Item III (2) of the language "issue then living of said decedent," and in Item III(5): "surviving issue." It is reasoned by the defendant that the redundancy in each case is not merely surplusage but a critically determinative additive which combines to alter the meaning of the word "issue."

The Commissioner argues that the taxpayer's construction requires a judicial "writing in" of the word "surviving" before "issue," which was rejected as a practice in De Korwin v. First Nat'l Bank of Chicago, 84 F.Supp. 918 (N.D. Ill.1949) aff'd on point cited 179 F.2d 347, 350 (7th Cir. 1949), but, unlike that case the instrument here does not require any insertion of words. It only requires that one ignore super-added words to find that the taxpayer has

stated what he maintains he intended to state.

The Commissioner makes the dubious point that the construction of the taxpayer produces a result that contradicts what is asserted as an obvious interest in the education of his then living grandchildren by insuring it through the trust. This creates a rather unearthly situation where the government, after asserting that the taxpayer intended to say something other than what he did say, now asserts his motivation. At any rate the consideration advanced regarding the education of the grandchildren is counterbalanced by the fact that there was hardly need for the motive since the children of the settlor—including the lone parent Mary Jolley Bruce—possess estates of substance, and apparently some financial ability.

The second major line of argument is addressed to the proposition that the trustees have the discretionary power to withhold and divert income to other uses. In essence the Commissioner maintains that example (1) of Treasury Regulations on Gift Tax, 26 C.F.R. section 25.-2503–3 applies in principle to disallow the exclusion. The example states that where the trustee is authorized in his discretion to withhold payments of income during any period he deems advisable and add such income to the trust corpus, then the beneficiaries' right to receive the payments is subject to the discretion of the trustees and is not a present interest. Here the beneficiaries have the unqualified right to income of the trust, however, the powers of Item IV allows the trustees to create debts and pay them off. The argument advanced is that if income may be used to settle trust obligations that may arise then there is no determinable yearly distribution of income.

In Commissioner of Internal Revenue v. Lowden, 131 F.2d 127 (7th Cir. 1942) the trustee was required to pay annually certain definite parts of the income to each of four sisters of the settlor and the balance in equal shares to his children then living. The Commissioner in-

sisted that the children's gift was future because it was dependent upon the amount paid to the sisters. Since it was uncertain as to the survival of the sisters the amount of the children's gift was uncertain and thus, it was argued, future. In finding that the gifts were of a present interest the court said that no possible contingency could prevent a beneficiary from receiving his aliquot part and that:

> [I]f the mere inability to forecast definitely the actual income from investments were the sole criterion of whether an interest was future, all present gifts of income accruing in the future could be classified as nothing other than future even though the right of enjoyment is immediate. Rents, dividends, indeed, practically all kinds of income are subject to lapse, change, and fluctuation. To constitute a future interest mere uncertainty of amount must be co-existent with restriction upon or postponement of immediate use and enjoyment. Commissioner of Internal Revenue v. Gardner, 7 Cir., 127 F.2d 929; Commissioner of Internal Revenue v. Brandegee, 1 Cir., 123 F.2d 58; * * *.

The trust in Commissioner of Internal Revenue v. Brandegee, 123 F.2d 58 (1st Cir. 1941), cited in *Lowden,* empowered the trustees to buy and sell property; to mortgage it or otherwise encumber it. While there were encumbrances existing the trustees had the discretion to pay obligations with income or principal as they saw fit or to distribute it to the beneficiaries. After the mortgages and charges had been paid off the distribution of income then was to become mandatory. The reasoning of the court there was that the income gift was present but inherently incapable of evaluation, hence it was not a present interest but a future interest.

Then, in discussing the burden of proof on the taxpayer to show the Commissioner's determination was incorrect, the court indicated how such proof could be made and remanded the case for findings in accordance with the opinion:

> To show that the beneficiaries took present rather than future interests under the terms of the trust, the taxpayer would have to establish that when the gift was made in 1937 there were no mortgages or other encumbrances outstanding, the existence of which would postpone the unqualified right of the beneficiaries to enjoyment of the net income. The taxpayer should be given an opportunity, upon remand, to establish, if she can, the existence of such a state of facts, since the issue as to the nature of the interests was not litigated at the hearing before the Board. 123 F.2d at 62.

The precise question as to the nature of the interests was in fact raised on the appeal but the order clearly states what the taxpayer is to prove and the persuasiveness of that proof. In Fischer v. Commissioner of Internal Revenue, 288 F.2d 574 (3rd Cir. 1961), two parcels of Staten Island property were placed in trust: the net income was to be paid quarterly for fifteen years at which time corpus was to be distributed. This was subject to change in some respects on certain contingencies but the primary plan is generally stated. A subsequent agreement between the settlor and the trustees defined "Net income" as used in the trust as being "such cash net income as equal, the excess of rents and other income to the trust corpus over and above disbursement and operating expenses and monies paid for amortization of any mortgage involved." The right to add property to the trust was reserved by the settlor. The trustees were empowered to buy, sell, and to invest in non-income producing assets and to charge any costs to principal or income. The gift tax return was accompanied by schedules showing that the projected income from apartment rentals would exceed expenses by a margin that would net more than three times the exclusions claimed. The Commissioner and the Tax Court had ruled the income gift was a present interest but that its value could not be estimated from the record with reasonable certainty because the income

figure used represented only productive potential and what income actually would be was unknown. The Court of Appeals agreed, citing Funkhouser's Trusts v. Commissioner of Internal Revenue, 275 F.2d 245 (4th Cir. 1960); La Fortune v. Commissioner of Internal Revenue, 263 F.2d 186 (10th Cir. 1958); Herrmann's Estate v. Commissioner of Internal Revenue, 235 F.2d 440 (5th Cir. 1956); Evans v. Commissioner of Internal Revenue, 198 F.2d 435 (3rd Cir. 1952); Commissioner of Internal Revenue v. Brandegee, 123 F.2d 58 (1st Cir. 1941); Vogel v. United States, 42 F. Supp. 103 (D.Mass.1941), for the proposition that a gift of present interest cannot qualify where the value of the interest is not *reasonably* certain. The Court quoted Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S. Ct. 1328, 89 L.Ed. 1720 (1945) as saying:

> In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. The taxpayer claiming the exclusion, must assume the burden of showing that the value of what he claims is other than a future interest. 325 U.S. 449, 65 S.Ct. 1331.

The Court then went further and held that no gross income figure would be acceptable as a basis for computing net income because the power to make disbursements for trust obligations had to be used in determining net income. The trustees were given the power "to charge any and all expenses, costs, fees, taxes, or other sums of money against the whole or any part or share of the property held thereunder, and *against principal or income* * * *."

Although the decision in Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945) and Commissioner of Internal Revenue v. Brandegee, 123 F.2d 58 (1st Cir. 1941) would indicate that there

could be proof that ascertainable portions of income would in fact be flowing presently to the beneficiaries the Fourth Circuit in Funkhouser's Trusts v. Commissioner of Internal Revenue, 275 F.2d 245 (4th Cir. 1960), has clearly expressed the law in this circuit. The opinion in *Funkhouser's Trusts* would leave no room for such considerations and it is binding authority on this court. The Circuit Court there found that discretion in the trustees to pay out of corpus such sums as they deemed necessary or advisable to an income beneficiary or immediate family of a beneficiary for illness, emergency, care, education, maintenance or support necessarily rendered income incapable of evaluation. Although the intimation is initially discernible that payments to the members of a beneficiary's immediate family was the defect, the clear import of the decision becomes apparent; power to invade corpus for a named beneficiary could wipe out or reduce corpus at any time with corresponding reduction of income productivity.

> Under the trusts, no beneficiary had any life interest in the income from any ascertainable amount of corpus. * * * Further, to the extent that any distribution (whether directly to or for the income beneficiary or on behalf of a member of his or her immediate family) could be considered an increase in the income beneficiary's income interest, this would come from corpus, and the gifts of corpus admittedly were gifts of future interests, excluded in valuing the beneficiary's interest in income when the trust was created. 275 F.2d at 247, 248.

Kniep v. Commissioner of Internal Revenue, 172 F.2d 755 (8th Cir. 1949) was reviewed, referring to other cases, as supporting the decision, as was Evans v. Commissioner of Internal Revenue, 198 F.2d 435 (3rd Cir. 1952); Herrmann's Estate v. Commissioner of Internal Revenue, 235 F.2d 440 (5th Cir. 1956); La Fortune v. Commissioner of Internal Revenue, 263 F.2d 186 (10th Cir. 1958).

The finding in this case that the invasion of corpus for education and maintenance, as in *Funkhouser's Trusts*, was not to occur until the death of a beneficiary does not except this case from the principle of *Funkhouser's Trusts*. Here we have a possibility that upon the death of a beneficiary the entire corpus may be invaded for the benefit of grandchildren who would succeed to income per stirpes but moreover, the powers in the trustees to buy, sell, and mortgage have the same potential for reducing corpus or wiping it out as in the *Fischer* trusts.

However the court in *Funkhouser's Trusts* approved the tax court decision in Newlin v. Commissioner, 31 T.C. 451 (1958), in the following language:

> Newlin v. Commissioner, 31 T.C. 451, decided slightly more than one month before the decision of the Tax Court herein, is not inconsistent with that decision. In the Newlin case, the present interests in income were terminable only with the consent of the trustees and all living beneficiaries. *This veto power was, understandably, held to justify treating the life income interests as susceptible of valuation.* 275 F.2d at 250 (footnote omitted) (emphasis added).

In the Jolley, Sr. Trust the beneficiaries are themselves the trustees thus creating and bestowing the power of veto on the beneficiaries. No action can be taken to terminate the normally anticipated flow of income without the consent of an income beneficiary. This provision would seem to bring the Jolley, Sr. Trust under the *Newlin* decision.

In *Newlin* the taxpayer set up gifts of common stock in trust to himself and his adult son as trustees for the benefit of the son and two adult daughters. The trust provided for the addition of "funds and/or properties" and gave the trustees "broad powers and authority" with respect to the management of the properties. It provided all net income shall be paid equally to the beneficiaries at intervals they request: their children were to take upon the death their respective parents per stirpes. Corpus was to be distributed only with the consent of all living children. The income interest was held evaluable actuarially because each life beneficiary had the power to veto. The gift of income together with the veto power was reasoned to be greater—not less than the interest without the protective power. The court stated that:

> It is to be observed that all the cases upon which the respondent has principally relied, are distinguishable on their facts to be reason of the provisions of the particular trust instruments involved therein. Foremost among these cases are: Kniep v. Commissioner, (C.A.8) 172 F.2d 755, affirming 9 T.C. 943; Evans v. Commissioner (C.A.3) 198 F.2d 435, affirming 17 T.C. 206; Herrmann v. Commissioner, (C.A.5) 235 F.2d 440, affirming T.C. Memo. 1955–212; Jennie Brody, 19 T.C. 126; and Fred La Fortune, 29 T.C. 479, on appeal (C.A.10). All these cases involved contingent gifts of trust income, in that the donor had given to the trustee a power under which he could in his sole and uncontrolled discretion diminish or destroy the gifts of income, by distributing the income-producing corpus; and in none of these cases did the donor, as did the present donor-petitioners, give the beneficiaries a power for their own benefit, to veto such action and thereby protect and preserve their income interests. We think there these differences between said line of cases and the present case are crucial; for in those cases the quantum of each gift was subject to the control of a person other than the donee, while here the gift to each life beneficiary was coupled with a power in him to protect his interest inviolate. 31 T.C. at 460.

With the approval of *Newlin* in *Funkhouser's Trusts* there was also, perhaps, some tacit recognition of the ruling in Hugh McK. Jones, 29 T.C. 200, acq 1958–2 C.B. 6, for the court took care to state: "there is no evidence in the record that the use of corpus for either class was so

remote as to be negligible." In *Newlin* it was stated that:

> Where the provisions of a particular trust instrument gave the trustee power to invade corpus and make distributions therefrom to the beneficiaries if the trust income proved insufficient for such beneficiaries' needs, it was held that the trustee's power to invade should be disregarded for gift tax valuation purposes, upon a showing that the exercise of such a power, though possible, was highly unlikely to occur; and, that, the value of the beneficiaries' "present interests" should be computed by use of the prescribed actuarial tables. Hugh McK. Jones, 29 T.C. 200, acq 1958–2 C.B. 6. See also in this connection Frances Carroll Brown, 30 T.C. 831, wherein it was held that the income beneficiaries of a trust had "present interests" susceptible of evaluation (presumably by the prescribed actuarial tables), notwithstanding that the trustees had been given power in their discretion to allocate any of the trust income to principal, such discretionary power was regarded as having been given solely for the purpose of facilitating administration of the trust; and it was explicitly disregarded for valuation purposes.

In the Jolley, Sr. Trust proceedings there has been in evidence substantial evidence that the use of corpus for the support, education and maintenance of the beneficiaries would be extremely remote. These Item IV powers which would seem to be entrepreneurial rather than managerial and fall under *Fischer* and *Funkhouser's Trusts* are not dissimilar to the powers in Frances Carroll Brown, 30 T.C. 831, held to be managerial to facilitate administration of the trust.

■ The veto power here works in principle as that in *Newlin* and the presence of the power would under the authority of *Newlin* render the income interest capable of valuation and hence a present interest qualifying for the exclusion. The item IV powers here are such as were regarded in *Newlin* with the commentary that:

> The valuation of life interests as well as remainder interests in trust, is necessarily subject to many uncertainties. For example, no one can determine as of the day of a particular transfer in trust how long any life beneficiary may live; or whether the trust estate will appreciate, depreciate, or be lost entirely; or what income, if any, the trust estate may yield during each year * * *. 31 T.C. at 457.

Under the authorities above the claim for refund qualifies for the exclusion. The taxpayer has discharged his burden irrespective of the evidence subject to the pending motion to exclude. Therefore it is unnecessary to make disposition of the motion.

The claim for refund is hereby granted.

And it is so ordered.